The People *v.* The Albany and Susquehanna Railroad Company.

THE PEOPLE OF THE STATE OF NEW YORK, Appellants, and JAMES FISK, JR., and others, Appellants, *v.* THE ALBANY AND SUSQUEHANNA RAILROAD COMPANY, and others, Respondents.

(GENERAL TERM, FOURTH DEPARTMENT, MAY, 1871.)

A question of usurpation, intrusion, or unlawful holding or exercising a corporate office, must be treated as a legal, not as an equitable cause of action.

If legal and equitable causes of action are joined in one complaint, and without the defendant's objection, the plaintiff proceeds to trial, he is entitled to judgment on establishing either or any of the causes of action.

Where legal and equitable causes of action are at issue in one cause, all the issues unless referred, or a jury trial waived, must be tried by jury. But where such issues were noticed for trial at a special non-jury term, and the plaintiff's case was opened without objection by the defendant, or suggestion that a jury was desired.—*Held*, the plaintiff's opening being made in good faith, and in such manner as to apprise the defendant that he had fairly entered on the trial, that an application afterwards for jury trial was properly regarded as too late, and the right thereto as waived.

The Attorney-General cannot maintain an action to restrain the prosecution of actions arising out of controversies between different claimants of the directorship or management of a railroad corporation, for cancellation of stock, to restrain town commissioners from voting on stock, those claiming to be directors from acting as such, &c., in which actions injunctions have been issued and receivers appointed and given rise to conflict of authority between public officers in the attempted execution of conflicting processes from different judicial officers, in such manner as to endanger the public peace. Such proceedings, and the disorder arising therefrom, do not constitute a public nuisance.

The People *v.* The Albany and Susquehanna Railroad Company.

The doctrine of *The People* v. *Miner* (2 Lans., 396), as to the authority of the Attorney-General in the prosecution of actions reaffirmed.

A judgment which awards to some of the defendants costs, as against the remaining defendants in the same action, unless the award is necessary in the adjustment of their rights in the subject-matter of the action is erroneous.

Section 274 of the Code intends by "ultimate rights," those rights of the parties in the subject-matter of the action in distinction from the costs, and the affirmative relief authorized by the second clause of the section, is relief as between plaintiff and defendant.

The discretionary power to make an additional allowance under section 309 of the Code is given to the court, and cannot be delegated. The appointment of a referee to ascertain and report what would be a proper allowance, and to which of the defendants it should be paid is erroneous.

An additional allowance, where the rights in controversy have no money value is also erroneous.

THIS was an appeal by the defendants, James Fisk and others, from a judgment entered upon the decision of Mr. Justice E. DARWIN SMITH, rendered after trial before the court at Special Term.

A statement of the pleadings will be found in the report of the case at Special Term (1 Lans., 308), and the findings of fact also appear there in the opinion of Mr. Justice E. DARWIN SMITH.

*David Dudley Field, Jno. H. Martindale* and *Edward G. Lapham,* for the appellants.

*Geo. F. Danforth, Mathew Hale, Jno. H. McFarland* and *Henry Smith,* for the respondents.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—MULLIN, P. J. This action was brought to obtain the following relief, viz.: 1st. To determine which of the two pretended boards of directors was duly elected by the stockholders of said railroad company, if either was so elected. 2d. To restrain both sets of directors from taking possession of said road, and from exercising any of its franchises, or in any manner interfering with the property of said company. 3d. If neither board be declared to be duly elected, that the office be declared vacant and a new election ordered.

4th. That 12,500 shares of the stock of the company be declared void. 5th. That the defendants and each of them be restrained from prosecuting further suits theretofore brought in relation to controversies concerning the affairs of this company. 6th. That the defendants be restrained from holding any election for directors. 7th. That the persons appointed receivers be restrained from taking possession of said road or any of its property, and from exercising any of the powers or duties of such officer. 8th. That a receiver be appointed to operate said road until the rights of the parties be judicially determined.

The relief granted by the court after hearing the proofs and allegations of the parties is, 1st. That the persons composing (what for sake of brevity is called) the Fisk board were not duly elected. 2d. The persons composing what for a like purpose is called the Ramsey board were duly elected. 3d. The plaintiff moves costs against the railroad company. 4th. That the complaint be dismissed as to the defendants Herrick and Burnes. 5th. That the further prosecution of the suits referred to in the complaint be restrained and the actions discontinued without costs. 6th. That the receivership be vacated and set aside. 7th. That the directors duly elected, together with Groesbeck and eight others of the defendants, recover of those defendants, who claimed to be, but were not, duly elected directors, the costs of the action. 8th. Reference ordered to Judge Selden to pass on the account of the receiver, and to ascertain and report what would be a proper extra allowance, to which of the defendants it should be made, and to settle such other matters of detail as may be necessary to carry the judgment into effect. 9th. That the directors adjudged to have been duly elected be let into immediate possession of the road, together with its property and effects, and that Banks, the receiver, transfer to them all the property in his hands.

It will be seen by this analysis of the relief demanded and that which was granted that the main objects of the action have been obtained, and thus two questions are presented for

our consideration; and these are, 1st. Whether the people can maintain such an action; and, 2d. Whether the court can grant the relief given by the judge at Special Term in this case.

1st. Can the people maintain this action? The complaint contains at least two causes of action: One to determine the validity of the election of persons claiming to be directors of the company, and as auxiliary to this, to determine the validity of certain stock issued by persons acting as directors, and to restrain the further action of the persons ascertained not to be duly elected, and to require the transfer to those duly elected of the property of the company.

In addition to this relief, certain suits, brought by some of the defendants against others of the defendants, are sought to be dismissed and certain receivers removed. This relief does not seem to have any connection with that of determining the validity of the election of the directors, but is wholly independent of it. So far, therefore, as the allegations in the complaint relate to that relief, they set out a second cause of action. By subdivision 1 of section 432 of the Code, which authorizes an action by the attorney-general to remove from office any person usurping, intruding into, or unlawfully holding any corporate office, it was competent for him to bring this action to remove from office one or both of the boards claiming to be directors of said company.

Before the Code this relief was obtained by the writ of *quo warranto*, issued out of the Supreme Court, and the issues joined in the progress of the proceedings were triable by a jury. I find no case in which the right to an office, whether the question arose between the people and an individual, or between individuals, was ever heard or determined in a court of equity.

The Code abolished the proceedings by *quo warranto*, and requires the right to be determined in an action brought pursuant to its provisions. (Code, § 428.)

The question of intrusion, usurpation or unlawful holding, having before the Code been triable in a court of law,

and the nature of the remedy not being changed, it must be treated as a legal and not an equitable cause of action.

The other cause of action is purely equitable. Two causes of action are, therefore, set out in the complaint, which, if separately stated, could not be joined in the same complaint under section 167 of the Code.

This misjoinder must be taken advantage of by demurrer (subdivision 5 of section 144 of the Code) or it is waived. (Same, § 148.)

The misjoinder was not thus taken advantage of, and was therefore waived.

The causes of action were not separately stated in the complaint, but were all united in a single count. This did not relieve the pleading from the objection of misjoinder, but it might require the defendant to proceed to correct it by motion instead of demurrer. If, however, he resorted to neither, the plaintiff might proceed to trial, and would be entitled to judgment on establishing, by evidence, either or any of the causes of action.

The issues as to the right of the two boards of directors to their offices being triable by jury, the issues in the equitable cause of action must also be thus tried unless referred, or a jury trial waived. (*Davis* v. *Morris*, 36 N. Y., 569.)

The cause was noticed, as I understand, for trial at a special term, for which no jury is summoned, and at which, consequently, no trial by jury could be had.

The plaintiffs' counsel opened the case without objection by the defendants' counsel, or suggestion that a jury was either demanded or desired.

At the close of the opening, the defendants' counsel demanded a trial by jury. The court refused the application on the ground that it was made too late, and was therefore waived.

If the opening of the counsel was made in good faith, and in such manner as fairly to apprise the defendants' counsel that he had entered on the trial of the cause, the demand for a jury trial came too late, and it was properly overruled.

The judge who tried the cause could decide this question of good faith much better than we can; and we must assume that he did not permit the defendants' counsel to be entrapped into the waiver of a right so important as that of a trial by a jury in a case, where it is not only a matter of right, but very appropriate.

I have examined the points presented by the appellants' counsel for the reversal of the judgment declaring void the election of the Fisk board; and I am unable to find, in the rulings of the learned judge who tried the cause, any error which calls for a reversal of the judgment.

It follows that we must affirm the judgment, so far as it declares void the election of the Fisk board, and valid that of the Ramsey board, and also that part which dismisses the complaint as to the defendants Herrick and Burns, and ordering that the Ramsey board be let into possession of the franchises and property of the company.

As to so much of the judgment as restrains the further prosecution of the actions described in the complaint, and as awards costs to the directors held to be duly elected, and to Groesbeck and eight others of the defendants to be paid by the directors composing the Fisk board, and as to so much of said judgment as directs a reference to ascertain and report what amount should be allowed by way of extra allowance, and to which of the parties it should be allowed, it must be reversed.

That part of the judgment which restrains the further prosecution of the actions in the complaint mentioned is reversed, on the ground that the Attorney-General has no right to maintain an action to restrain parties from bringing or prosecuting actions in any of the courts of this State, upon any of the grounds suggested by the plaintiff's counsel in their points, or on the argument of the appeal.

I had occasion, while sitting in the General Term, in the fifth district, to investigate the question whether the attorney-general had power to bring an action to restrain town commissioners appointed under an act authorizing the bond-

ing of towns for railroad purposes. I came to the conclusion that he had not, and that conclusion was acquiesced in and approved by the other judges sitting with me in the General Term. My views will be found reported in 2 Lansing, 396, in the case of the *People* v. *Miner*.

I will content myself by referring to that opinion, without repeating the views therein advanced. Further discussion and reflection have only served to confirm my previous opinions. The question in the case reported is not the same as the one presented in this case. But the same reasons that led me to the conclusion in that case, that the attorney-general could not maintain that action, are conclusive against his right to maintain the action in this case. There is no precedent that I have found, or been referred to, justifying his interference, nor any principle, either of law or equity, which will authorize it.

There are a few considerations applicable to the law, which had no application to the case of *The People* v. *Miner*, which it is proper to suggest.

Granting an injunction against the further prosecution of the actions mentioned in the complaint, was not necessary in order to determine the validity of the election of either board of directors, or to vest in the board duly elected the whole title to the franchises and property of the company. It was a matter with which the company itself had nothing whatever to do, except so far as it was made a party to the suits, and, as I understand the case, there were several suits to which it was not a party. But if it was a party to all of them, I know of no principle of law or rule of practice that would authorize the attorney-general to intervene to stay or dismiss such actions.

No distinct ground for such interference was mentioned by counsel; but it was suggested that the litigation and disputes between the several claimants to the office of directors and others interested in the company were leading to disorder and violence, and that a case of public nuisance was estab-

lished, which it was the right and duty of the attorney-general to stop.

It is not denied but that the attorney-general may invoke the aid of a court of equity to abate or prevent a public nuisance. But the facts alleged in the complaint and established on the trial, do not establish a public nuisance such as the attorney-general may invoke the aid of the court to abate, or the court assume to intermeddle with.

The nuisances over which the court has jurisdiction, are trades, erections or other things injurious to the public health or morals; interference with the right of passage in public streets or navigable streams, and the appropriation of the public domain to private use. This is not an accurate enumeration of what are known in the law as public nuisances, but it shows the characteristics of the acts, &c., which are considered and treated as public nuisances, and the litigation in question, has none of the qualities which are essential to constitute an act or thing a public nuisance.

If the litigation and controversies between the officers and stockholders tended to a breach of the peace, the sheriff, with the aid of the posse of his county, had power, and it was his duty, to interfere and prevent it. Neither the courts of law or equity are clothed with power to suppress riots or other disturbances of the public peace

It would be a most dangerous precedent to allow the attorney-general, or any other officer of the government, to intermeddle in litigation between individuals, however numerous the parties or however bitter the controversy. In a free government, the people must be left at liberty to carry on even their quarrels, relieved from the interference of the government officials, so long as the public peace is not invaded, and when it is, the law affords ample means to preserve order without recourse to any of the peculiar instrumentalities of courts of equity.

Interference being once permitted, it could not be confined to the prevention of unnecessary litigation. It would extend to all matters of dispute between individuals, and thus, under

pretext of preventing breaches of the public peace, the attorney-general would become the regulator of all the affairs of society, to the injury of individuals and the destruction of individual rights.

That part of the judgment that awards costs in favor of the Ramsey directors and others, against the Fisk directors, is reversed because the court below had no power to award such costs.

By section 441 of the Code, the plaintiff was entitled to the costs of the action against the persons who intruded into, usurped or unlawfully held the office or franchise of directors of said railroad company.

This is the only statutory provision relating to costs in such an action.

The only provision of the Code which affords any color for a claim that the court could give costs to some of the defendants against others of them, is the first clause of section 274, which provides that judgment may be given for or against one or more of several plaintiffs, or for or against one or more of several defendants, and it may determine the ultimate rights of the parties on each side, as between themselves, and it may grant to the defendant any affirmative relief to which he may be entitled.

By giving to the court power to determine the ultimate rights of the parties on each side, as between themselves, it was not intended to authorize it to give costs to a part of the defendants in an action against the remaining defendants, unless it become necessary, in the adjustment of their rights, in the subject-matter of the action.

The "ultimate rights" intended, are the rights of the parties in the subject-matter of the litigation, as distinguished from the costs which are the incidents merely.

Could the court, in an action of replevin against the plaintiff in an execution and the sheriff, for an illegal taking of the plaintiff's property, and in which the plaintiff recovered against both, order judgment that the plaintiff, in the execu-

tion, pay to the officer his costs for defending the action? It seems to me not.

In partition, the court not only declares the share of the premises to which the plaintiff is entitled, as between him and the defendants, but also the share to which each of the defendants is entitled.

Relief is uniformly administered in this way in equity cases, but no such practice was recognized in the courts of law prior to the Code. Now, however, the court may, in a proper case, administer the same relief in actions at law. Actions in the nature of *quo warranto*, do not admit of such relief unless authorized by statute.

The clause of section 274, which authorizes the court to grant to the defendant any affirmative relief to which he may be entitled, does not apply to this case; the relief intended is relief against the plaintiff, and not against the co-defendant.

The only reason for charging the Fisk directors with the costs of other defendants, must be that, by their unlawful acts and claims, the Ramsey directors, and others, were drawn into the litigation, and they should, for that cause, pay the expenses which they have thus unjustly imposed upon them. Had the court imposed the costs of the action on the Fisk directors alone, it would not only have conformed its judgment to the statute, but would have done justice to the railroad company by relieving it from a burden which it should not be called upon to bear. But I know of no precedent for compelling part of the defendants in an action to pay the costs to the other defendants, unless the court adjust the ultimate rights of the defendants in the subject of the action.

The judgment dissolves injunctions and removes receivers. This is usually such relief as is given in equity; but injunctions may issue and receivers be appointed in legal actions, and both might be very proper in an action in the nature of a *quo warranto*. And in this case the relief thus granted was indispensable to restore the Ramsey directors to the full enjoyment of the franchises and rights of property of the railroad company.

Aside, therefore, from enjoining the further prosecution of the actions mentioned in the complaint, and compelling their abandonment, no equitable relief was granted to the plaintiff, and none, either legal or equitable, to any of the defendants, as against the others, unless the discontinuance of the suits may benefit some of the defendants. But as we hold that relief improperly granted, the only ground for granting costs to certain of the defendants against the others is removed, and hence the award of costs to them must be reversed.

This appeal is taken from the judgment. When it was brought the reference ordered by the court had not been disposed of, and, therefore, according to the practice as settled, the judgment was not a final one, from which an appeal could regularly be taken. (*Lawrence* v. *Farmers' L. and T. Co.*, 15 How., 57; *The People* v. *Haws*, 39 Barb., 69.)

The respondents have not applied to dismiss the appeal, and they are to be considered as acquiescing in its regularity, and the appellants cannot, having appealed from it as a judgment, object to it as not being properly brought.

The appropriate time to pass upon the regularity of the order of reference would be when an appeal is brought after the referee has made his report, and the extra allowance, if any, is inserted in the record of judgment.

But I see no impropriety in now passing upon the questions and relieving the parties as well as the court from further litigation in regard to the allowance.

Section 309 of the Code authorizes the court, in its discretion, in difficult and extraordinary cases, when a trial has been had, to make a further allowance to any party, not exceeding five per cent. That this power was intended to be given to the court only is emphatically declared, by declaring the subject to be in its discretion.

Such a power cannot be delegated. The court must itself, upon its own knowledge, or upon facts judicially established before it, ascertain and declare to whom an allowance is to be made, and how much is to be given.

It is probable that the court might, when the case has not been tried before the judge who holds it, refer it to a referee to ascertain and report the facts which must be ascertained by the court before an allowance can be properly ordered. But when the application for an allowance is made to the same court before which the cause was tried, it is difficult to comprehend the necessity for a reference. The facts must be presumed to be within the knowledge of the court; but, if not, the inquiry should be limited to the ascertainment of such facts as are not so known.

I am, therefore, of the opinion, that it was not competent for the court to refer it to a referee, to ascertain and report what would be a proper allowance, and to which of the defendants it should be paid. I am also of the opinion that the case was not one in which an extra allowance could be made, as there is no data furnished by which to measure the allowance. The rights in controversy have no money value.

So much of the judgment as restrains the further prosecution of the actions mentioned in the complaint, and requires them to be discontinued without costs, and so much of said judgment as awards costs in favor of the Ramsey board and eight other defendants, against the Fisk board, and so much of said judgment as appoints a referee to ascertain how much and to whom an extra allowance should be made, is reversed, and all the rest of the judgment is affirmed without costs of the appeal to either party.

We cannot leave this case without expressing our profound regret that in the proceedings prior to its commencement so much ill feeling, not only between those who are parties, but also between counsel, should have been excited. The magnitude of the interests involved, and the real or supposed injury likely to be done to those interests in the event of the success of those who were believed to be acting in hostility to them, afforded sufficient cause for excitement and passion. All this has passed away, and we do not doubt a better state of feeling exists amongst all connected with the affairs of the Albany and Susquehanna Railroad Company.

Notwithstanding the great excitement under which counsel have acted during this protracted litigation, it affords us great pleasure to be able to say that we have seen nothing in the proceedings in the action, on either side, unbecoming gentlemen of the high professional standing of those engaged in this suit.