BABCOCK v. SCHUYLKILL & L. V. R. Co.

(*Supreme Court, General Term, First Department. June 26, 1891.*)

CORPORATIONS—STOCKHOLDERS—CONSOLIDATION.

Plaintiff subscribed for certain shares of stock of the P. Ry. Co., and paid 10 per cent. of his subscription. Thereafter the P. Ry. Co. was consolidated with defendant, under an agreement by which the stockholders of the P. Ry. Co. were to receive consolidated in place of their original stock. *Held*, that plaintiff was not entitled to demand full-paid certificates of stock from defendant on account of his subscription to the P. Ry. Co. stock, without producing or showing that he was entitled to full-paid certificates from the P. Ry. Co., to be exchanged for defendant's stock.

Appeal from special term, New York county.

Action by Edward B. Babcock against the Schuylkill & Lehigh Valley Railroad Company. From a judgment for defendant, plaintiff appeals. For former report, see 9 N. Y. Supp. 845.

Argued before VAN BRUNT, P. J., and DANIELS and LAMBERT, JJ.

*Shearman & Sterling, (Thomas G. Shearman, of counsel,) for appellant. Benjamin S. Harmon, for respondent.*

VAN BRUNT, P. J. This action was brought to compel the issue by the defendant of 1,050 shares of its capital stock to the plaintiff. It appeared upon the trial that the plaintiff, at the time of the commencement of this action, was, and now is, a resident of this state, and that prior to the 8th of February, 1887, the Pottsville & New York Railroad Company had been duly organized under the laws of Pennsylvania; that in the articles of association of said

railroad company the plaintiff appeared as the subscriber for 2,100 shares of the capital stock of said railroad company, of the par value of $50 per share, but no certificate or other evidence of the right of the stockholders of said company to its capital stock was ever issued to the plaintiff, or to any stockholder of the company; that the defendant, prior to said 8th of February, 1887, was a corporation duly organized under the laws of the state of Pennsylvania, and on said day the Pottsville & New York Railroad Company merged and consolidated its capital stock, franchises and property, with and into the capital stock, etc., of the defendant, in accordance with the provisions of the laws of the state of Pennsylvania, and the defendant, as such consolidated corporation, is duly organized and existing under the laws of said state, with a capital stock of $2,000,000, divided into 40,000 shares, of the par value of $50 each.   The agreement of merger between the two companies contained, among other provisions, the following: "*Eighth.* That each stockholder in either of the two corporations which are to be hereby consolidated, upon surrendering to the treasurer of the consolidated company any evidence he may possess, by certificate or otherwise, of his right to stock, if he have any such evidence, or, if no such evidence has been issued to him, then upon due demand being made upon the treasurer, shall be entitled to receive from the treasurer of the consolidated company a certificate for the capital stock of the consolidated company in the proportion of two shares in face value of the Pottsville & New York Railroad Company stock for one share, at the same value, in the consolidated company, and shall receive, for each share in the Schuylkill & Lehigh Valley Railroad Company, share for share in the consolidated company; that is to say, an amount equal to one-half in face value to that held by him in the Pottsville & New York Railroad Company, and to an amount equal in like value to that held by him in the Schuylkill & Lehigh Valley Railroad Company, or to which he was entitled in the former companies, respectively." The plaintiff has not paid, nor offered to pay, more than 10 per cent. of the par value of his alleged subscription to 2,100 shares of the capital stock of the Pottsville & New York Railroad Company; and there was no proof that the plaintiff, prior to the commencement of this action, had ever demanded from the defendant, or any of its officers, any certificates of the capital stock of the defendant. It further appeared upon the trial that the defendant refuses to issue any shares of its capital stock to the plaintiff, or to recognize him as a stockholder. Upon the termination of the plaintiff's case, the counsel for the defendant moved for judgment on the proofs and pleadings, upon the following grounds: (1) That no demand had been proved; (2) that plaintiff had not proved that he continued to be for five years after his alleged subscription even the holder of said subscription; (3) that he had not proved that he was a shareholder in the Pottsville & New York Railroad Company at the time of this consolidation, or that he had ever paid, or offered to pay, either to the Pottsville & New York Railroad Company, or to the defendant, more than 10 per centum of the face value of his said alleged subscription.   The court granted this motion, and from the judgment thereupon entered this appeal is taken.

It is urged upon the part of the appellant that, it being admitted by the pleadings that the defendant refused to issue any stock to the plaintiff, or to recognize him as a stockholder, a demand was superfluous. It may be that the admission contained in the pleadings does not bear the broad interpretation put upon it by the plaintiff, and that the refusal refers to the time of the verification of the answer in which it is contained. But it is not necessary to consider this proposition, because the judgment can be supported upon other grounds. It seems to us clear that the plaintiff was not entitled to receive this stock from the defendant until he had become entitled to receive the stock from the Pottsville & New York Railroad Company. It is claimed as well-settled law, both of Pennsylvania and New York, that a subscriber

to stock in a railroad corporation, whose subscription is accepted by that corporation, becomes by that act a stockholder to all intents, although he has only paid 10 per cent. of his subscription; and that he is entitled to his certificate, and to vote and otherwise to act upon perfectly equal terms with all other stockholders, even though the others have paid up in full. What the law of Pennsylvania may be upon this subject is not material to the consideration of this appeal, because such law has not been either proven or pleaded. But we have searched in vain for any adjudication in the courts of this state which supports any such conclusion. We are referred to the case of *People* v. *Railroad Co.*, 1 Lans. 308, affirmed 5 Lans. 25, but fail to find any such proposition established by that adjudication. Reference is also had to the case of *Rutter* v. *Kilpatrick*, 63 N. Y. 604, but no such proposition is established by that case, because it appears from the record in that case that the subscriber had paid into the corporation the amount subscribed, and all that was decided was that the relation of stockholder was established by the subscription and payment, and did not depend upon the issue of the certificate or other evidence of such right by the corporation.

Attention is also called to the case of *Railroad Co.* v. *Dudley*, 14 N. Y. 336–346. In that case the question involved was whether an agreement to take a certain number of shares of the capital stock of the railroad company, subscribed previously to the incorporation of the company, creates a promise, express or implied, to pay for the shares for the recovery of which the company may maintain an action against the subscriber. It is true that it is stated in the opinion that when the defendant had subscribed his name and paid his 5 per cent. the effect was to make him a stockholder and the owner of 20 shares, subject to the forfeiture prescribed. But it is also expressly recognized that his title to the stock does not become complete, and he entitled to receive a certificate therefor, until the payment of the subscription, and that his interest therein might become forfeited by non-payment of said subscription. In the case of *Spear* v. *Crawford*, 14 Wend. 20, the same doctrine was enunciated, the question involved being whether a party who subscribed for a certain number of shares of stock was liable to the creditors of the company to the nominal amount of the stock of the said company subscribed by him, although he had not paid in any part of his subscription, or done any act whatever as a stockholder; and it was held that, because of the mere fact of subscribing, the corporation might compel such subscribers to pay for their stock; and that public policy required that they should be considered stockholders, so far as to be compelled to meet the debts of the corporation. The court say, after citing certain cases: "It is true that none of these cases decide the precise point that the mere fact of subscribing to stock of an incorporated company constitutes such subscriber a stockholder. But they do decide that such subscription puts it in his power to become a stockholder, in the broadest and most unqualified sense of the term, by compelling the corporation to give him the legal evidence of his being a stockholder, upon his complying with the terms of the subscription; and, on the other hand, that it puts it in the power of the corporation to compel him to pay for the shares subscribed by him, and thereby to become a stockholder to that amount. Neither party, therefore, can escape from the obligations created by the subscription without the consent of the other."

It seems to us clear, therefore, that, in order to entitle the plaintiff to claim full-paid certificates of stock from the defendant, he was bound to show that he was entitled to such certificates from the corporation to which he was a subscriber. It is true that the consolidation agreement provided that every stockholder in either corporation, upon surrendering to the treasurer of the new company his certificate of stock, if any, and without such certificate, if none had been issued to him, should receive shares in the new company, in exchange for shares in the old company, in the proportion of one share of

stock in the new company for two shares in the old company.   But it is evident that the clause in the agreement in regard to the rights of the parties who did not receive certificates of stock contemplated the existence of the fact that such parties were entitled to receive such certificates from the Pottsville & New York Railroad Company, but that they had not been issued to them.   Now, it is clear that the plaintiff was not entitled to receive any certificate of shares in the Pottsville & New York Railroad Company until he had paid his subscription.   He had no shares to exchange, and the language is that he should receive shares in the new company in exchange for his shares in the old company.   Under these circumstances, as he had no shares in the old company to exchange, it is difficult to see how the barter could be effected.   The claim that no payment was necessary to make the subscription valid, but the fact that the corporation had been formed on the assumption that the Pottsville & New York Company had been duly organized, is presumptive proof of due payment cannot prevail.   There is nothing to show but that the Pottsville Company might be duly organized without having all its capital stock paid up in full, it having the right to collect such subscription from its stockholders, and its creditors having the power to enforce such right.   The point as to the failure of proof as to payments made by the associates of the plaintiff in the Pottsville Company is of no avail, because that question was entirely immaterial.   Simply because A. gets what he is not entitled to, gives no right to B. to claim, in a court of justice, that the same fraud should be perpetrated in his behalf.   Neither is the claim of the plaintiff that, although he has paid his 10 per cent., he gets nothing: He was entitled to nothing until he paid the balance of his subscription.   He had subscribed for a certain number of shares of stock, and agreed to pay the balance.   He was not entitled to the certificates or evidence of ownership of these shares until he had paid the balance, and therefore there was nothing which the court could decree in his favor.   Upon the whole case, we are of opinion that the case was correctly decided in the court below, and that the judgment should be affirmed, with costs.   All concur.