STATE OF MISSOURI *ex rel.* MILO E. LAWRENCE *et al.*,
Respondents, v. GEORGE McGANN *et al.*, Appellants.

| 64 | 225 |
|----|-----|
| 164s | 631 |

St. Louis Court of Appeals, December 24, 1895.

1.  **Corporations:** ELECTION OF DIRECTORS: MANDAMUS.    Mandamus is
a proper remedy to compel canvassers of votes cast at an election of
directors of a private corporation to perform a duty imposed on them
by law, nor is the right to resort to this remedy withdrawn by our
present statutes (R. S., sec. 2520, *et seq.*).

2.  ———: ———: RIGHT OF STOCKHOLDERS TO CHANGE THEIR VOTES.
Stockholders may, while a meeting for the election of directors is
still in progress, change the votes previously cast by them, though
the result of the election is altered thereby, if they act in such time
and with such publicity that no undue advantage is thereby taken
over other stockholders.    But this does not mean that a stockholder
may make any number of such changes, and thereby embarrass the
meeting.

VOL. 64 app—15

*Appeal from the St. Louis City Circuit Court.*—HON. THOS. A. RUSSELL, Judge

REVERSED.

*Rowell & Ferriss* and *Joseph S. Laurie* for appellants.

(1) Mandamus will not lie for the reason that relators have, under the statute (R. S., secs. 2520-2523), a remedy which is plain, speedy and adequate, furnishing, as it does, redress for the precise injury complained of herein. *Byrne v. Harbison,* 1 Mo. 160; *Williams v. Judge,* 27 Mo. 225; *Mansfield v. Phillips,* 50 Mo. 338; *State ex rel. v. Marshall,* 82 Mo. 484; *State ex rel. v. Taffe,* 25 Mo. App. 567; *State ex rel. v. McCracken,* 60 Mo. App. 650; 14 Am. and Eng. Encyclopedia of Law, p. 101, sec. 4; Spelling on Extraordinary Remedies, sec. 1374; Merrill on Mandamus, sec. 25; High on Extraordinary Remedies, sec. 16; *State ex rel. v. McCauliffe,* 48 Mo. 112; *State ex rel. Clark v. Smith,* 104 Mo. 661; *State ex rel. v. Lesueur,* 29 S. W. Rep. 278; Cook on Stock & Stockholders, sec. 619; *Owen v. Whitaker,* 20 N. J. Eq. 122; *In re Election of St. Lawrence Steamboat Co.,* 44 N. J. L. 529; *Tomlin v. Bank,* 52 Mo. App. 433. (2) Under the law applicable to this corporation a stockholder has a right to change his vote at any time before the time expires for voting. The general rule of holding such elections is that in the absence of statutory regulations any method of expressing the will of the parties may be adopted and all parties may change their votes. 1 Beach on Corporations, sec. 298; Cook on Stockholders, sec. 606; Cushing on Parliamentary Rules, sec. 1828; Waples, Parliamentary Rules, sec. 155; Cushing on Parliamentary Rules, sec. 49.

*J. M. Lewis* and *Elijah Robinson* for respondent.

ROMBAUER, P. J.—The action is mandamus. All the relators claim to have been legally elected as directors of a telegraph corporation, organized under the laws of this state, at an election where the defendants served as inspectors to canvass the vote. There is no controversy touching the qualification of any of the persons voted for at said election, nor is there any controversy touching the legality of the election in other respects than those hereinafter stated. The nature of the controversy is best shown by the pleadings.

The alternative writ states that the votes cast at said election showed the following true result: Milo E. Lawrence, B. W. Livers and E. A. Potter, the three relators, received, respectively, 1451, 1450 and 1449 votes, and George M. Myers, E. L. Martin, P. H. Madden, S. B. Ladd and J. C. Boyd received 1049 votes each. George M. Myers thereupon, pretending to act for himself and certain other stockholders, illegally, wrongfully and fraudulently, deposited with the inspectors, and induced them to receive from him, a second set of ballots which, if counted, would wholly change the result of said election as above stated. The writ then states that the defendant inspectors are wholly under the influence of Myers, and, unless restrained, will cast up said second set of ballots. The writ then commands the defendants to show cause why they should not be compelled to cast up and certify the vote first cast.

The defendants demurred to the writ because it failed to show that the relators were entitled to the relief, and because they had a complete and adequate remedy under the provisions of sections 2520 to 2523 of the Revised Statutes of 1889. This demurrer was overruled.

The defendants thereupon made return stating, in substance, the following facts: The votes cast for the relators at said election are correctly stated in the writ, and also the votes first cast for the five other persons. It was officially announced at the meeting that stockholders would have a right to vote from 9 o'clock A. M. until 12 o'clock at noon (which is the time provided by section 2484 of the statute), and that the inspectors would receive votes between these hours. At half past 10 o'clock in the forenoon Myers and other stockholders declared to the inspectors that they had made a mistake in their vote, and asked leave to withdraw their votes and to cast them cumulatively for three directors. The inspectors permitted the withdrawal of the votes first cast, and received in lieu thereof such cumulative vote. The defendants admit that they believe and intend to certify that the votes cast at said election according to the intention of those voting, were as follows: For George M. Myers, $1822\frac{2}{3}$ votes; for E. L. Martin, $1822\frac{2}{3}$ votes; for P. H. Madden, $1821\frac{2}{3}$ votes, for Milo E. Lawrence, 1451 votes; for B. W. Livers, 1450 votes; for E. A. Potter, 1449 votes.

Issue was taken on this return by reply. The court after hearing the evidence made the writ peremptory, and the defendants appeal.

The evidence adduced substantiated the facts stated in the return, with the additional features that the change in the vote by Myers and other stockholders voting with the majority was not made until, by figuring on the vote as cast, such stockholders ascertained that, unless they, too, voted cumulatively as the minority stockholders had done, the result would be an election of the majority of the board by a minority of the stockholders, and that the minority stockholders protested against any change in the vote being permitted.

Myers in casting his second vote indorsed thereon the words: "This is my final vote."

The errors complained of by appellants are the overruling of their demurrer to the writ, and the issue of a peremptory mandamus on the pleadings and evidence. They claim that on the facts stated in the writ mandamus will not lie; but, even if it does lie, they were justified under the facts show in evidence in casting up the second vote of the majority stockholders.

The first contention is based on the following statutory provisions in the revision of 1889:

"Section 2520. If any person shall conceive himself aggrieved by an election or any proceeding concerning an election of directors or officers in any such corporation, he may apply to the circuit court for *redress*, giving a reasonable notice of his intended application to the party to be affected thereby. Service of such notice shall be deemed sufficient, if delivered to the person in charge of the chief office of the corporation ten days before the hearing by the court.

"Section 2521. It shall be the duty of the circuit court, upon such application, to proceed forthwith, in a summary way, to hear the proofs and allegations of the parties, or otherwise to inquire into a cause of complaint, and thereupon to make such order and grant *such relief* as the circumstances and justice of the case shall seem to require. If the election complained of shall be set aside, the court may order a new election at such time and place as they shall appoint.

"Section 2522. The circuit court, if they can not otherwise arrive at a satisfactory result, may order an *issue* between the parties to be made up, in such manner and *form*, and to be tried in such court, as they shall select; or may permit or direct the attorney general to file an information in the nature of a *quo war-*

*ranto*, if the case be one in which that proceeding would be competent and effectual.

"Section 2523. If any such issue shall be ordered, or information permitted or directed to be filed, it shall be the duty of the circuit court to make such *further orders* in relation to the time and *mode of pleading*, the examination of witnesses or the parties, the production of books and papers, and the time and place of trial or hearing, as shall, in their judgment, be effectual for expediting the proceedings, saving expense to the parties, and causing a final determination to be had with as little delay as the nature of the controversy will permit; and the court may adjudge the costs according to equity."

These provisions first appeared in the general statutes of 1865, and were there made applicable exclusively to railroad corporations. The revisors of 1879 transplanted them into the first article of the general corporation law, and they became applicable to all corporations. It must be conceded that, but for these provisions, the right of the relators to a mandamus on the facts stated in the writ would be unquestionable, since mandamus has always been held the proper remedy in this state to compel canvassers of election to perform a duty imposed upon them by law. *State ex rel. v. Garesche*, 65 Mo. 480; *State ex rel. v. Berg*, 76 Mo. 136.

The relators contend that these provisions do not change the law for the following reasons: It nowhere appears that the remedy they afford was intended to be exclusive of remedies already existing, nor that the *redress, order, issue and form, time and mode of pleading* spoken of in the various sections were intended to exclude the redress, by mandamus; on the contrary, in view of the fact that the same article in section 2524 expressly provides that the right of appeal shall not au-

thorize *a supersedeas* in any case of mandamus brought by a stockholder to enforce any common law or statutory right *in connection with the corporate elections*, the law contemplates that such rights may be enforced by mandamus, notwithstanding the provisions contained in the sections above set out.

This argument, we conceive, is forcible. It has always been the policy of the courts of this state to treat statutory remedies as cumulative, and not as exclusive of common law remedies, unless the contrary intention of the legislature clearly appeared by the context of the statute. No such intention appears in this instance, and, hence, we conclude that the court may issue its writ of mandamus in the first instance, or give effect to the statutory provisions above quoted by issuing the writ in aid thereof. Taking this view, we need not decide whether the defendants have waived their right to insist on the demurrer by pleading over. See *West v. McMullen*, 112 Mo. 405.

The second proposition in the case raises a question of first impression, and must be solved on principle by determining the object of cumulative voting and what view will best accomplish such object. The *corporation* for purely pecuniary profit was unknown to the common law, and is a growth of modern legislation. The Merchants Adventurers, Russia Company, Turkey Company, Bank of England, and East India Company, were but so many partnerships with special privileges, and, unless otherwise specified in the grant or rules of the company, each participant therein had his equal vote, regardless of the extent of his interest. In the modern corporation for pecuniary profit, which is eminently the growth of comparatively recent legislation, the right of the control of corporate affairs is apportioned almost uniformly according to interest making the share, and not the shareholder, the unit of

vote.   This radical change was found to work inequitably, since thereby a slight majority in interest could exclude the minority from all control in the management of corporate affairs.   To remedy this evil, the cumulative system was devised and adopted in several states, this state being among the number.

The constitution and laws of this state provide that, in all elections for directors or managers of any incorporated company, each shareholder shall have the right to cast as many votes as shall be equal to the number of shares held by him, multiplied by the number of directors, and he may cast the whole number of votes for one candidate, or distribute them among two or more candidates.   Constitution, article 12, section 6, Revised Statutes, 1889, section 2490.   These provisions were designed, as the terms used indicate, to enable a minority in interest of the stockholders to elect a minority of the directors.   The larger the minority, the greater the representation possible to be secured. Thompson on Corporations, section 753; Cook on Corporations, section 609..  It can not be seriously contended for a moment that the object of such provisions is to enable the minority in interest of the stockholders present at the corporate meeting to elect the majority in number of the directors by any method which they may adopt; for such a holding would be equally opposed to the common law rule of numbers and the modern rule of interest, and could not be vindicated on any principle.   The majority of a corporation, in the absence of statutory provisions to the contrary, means that portion of the shareholders present at a general meeting in person or by proxy who are entitled to control the corporation by their votes.

It will be thus seen that the true result of the election in question, as claimed by the defendants, is strictly in conformity with the policy of the law, and the rights

and intention of the shareholders voting. The minority shareholders have secured two out of five directors, which was the greatest number they were entitled to elect. Unless, therefore, the conduct of the election was irregular in some *essential* particular, that result can not be disturbed by the courts.

An able argument is made by opposing counsel *pro* and *con* the proposition, whether a telegraph corporation must, under the statute, elect its directors by ballot. The solution of the present inquiry does not depend on the mode of election. The right of a voter at a popular election to change his vote does not depend on the question whether the election is one by ballot or *viva voce*. The right of a change has been denied in both cases. *Washburn v. Ripley*, C. & H. Con. El. Cas. 681; *Draper v. Johnson*, *Ibid.*, 712. One reason for the rule, as stated by Judge McCrary, is that the inspectors can not be presumed to know how any person voted, and, for that reason, the moment the ballot is deposited, all control over it by the officers of the election is ended. McCrary on Elections, section 244. While the rule *ab inconvenienti* should not be invoked except in cases of doubt, the absolute inconvenience of establishing any other rule in popular elections, where the number of electors is very large and the time within which they must cast their vote is limited, makes that rule in itself controlling. When the vote cast by the voter is readily ascertained, as is done in parliamentary elections, his right to change it at any time before it is finally announced has never been questioned.

It must be borne in mind that the vote given at these corporate elections, whether given in writing or *viva voce*, is always essentially an *open* as distinguished from a *secret* vote. In order to enable the inspectors to canvass the vote, they must know how each share-

holder voted, and they must compare his vote with the registered number of his shares. In order to enable each shareholder to challenge any vote cast, he is entitled to be informed of the name of the voter and the number of votes cast by him and in whose behalf cast, as he is entitled to be informed in regard to the validity of proxies held by the voter.

It must be further remembered that the rule *ab inconvenienti* is wholly inadmissible in this case, as the only claim made is that the shareholder has the right to change his vote *once*, and not that he has the right to change it any number of times. It must also be borne in mind that the change made in this case was made more than an hour prior to the announced close of the polls; that the announcement of such a change was publicly made in the presence of the minority shareholders, and that there was nothing to prevent the latter from changing their own vote if they so desired. In fact, it is not pretended that the minority shareholders could by any subsequent change alter the result, or obtain a greater representation on the board than that finally accorded to them as the result of the election.

It results from the foregoing that the court erred in awarding a peremptory mandamus. As there is no controversy touching the facts and the question is purely one of law, there is no necessity for remanding the case.

All the judges concurring, the judgment is reversed, and the writ dismissed.