In the Matter of the Application of J. ROGERS YOUNG, Respondent, for a Peremptory Mandamus Order against J. H. JEBBETT and Others, as Judges of Election of the Stockholders' Meeting of the FRONTIER MORTGAGE CORPORATION and Another, Appellants.

Fourth Department, June 30, 1925.

Corporations — election of directors — proceeding to compel inspectors of election to receive certain proxies and count votes thereon — corporation organized in Delaware with power to hold meetings in New York — all officers and directors, except one, and nearly all stockholders, reside in New York — proxies in question were intrusted to one of inspectors — through oversight inspector failed to file them before polls were closed — failure to file was called to attention of inspectors before result of vote was announced — mandamus was instituted and notice that petitioner would proceed under General Corporation Law, § 32, served — court has power under Civil Practice Act, § 1329, to authorize amendment to petition — contested elections are litigated summarily and exactness in procedure is not required — failure to cancel revenue stamps on proxies does not invalidate them — fairness and good faith should prevail in stockholders' meetings — under circumstances inspectors should have received proxies and counted votes thereunder — court had jurisdiction though technically corporation is foreign one — inspectors of election ordered to reconvene, receive proxies and count votes thereon, and directors, officers and stockholders to convene and accept report.

In proceedings to compel the inspectors of election of a Delaware corporation, which had authority to hold meetings in the State of New York, to receive certain proxies and count the votes thereunder, which proxies were intrusted to one of the inspectors of election but not filed until the polls were closed, but which were offered before the result of the vote was announced, the court had power under section 1329 of the Civil Practice Act to permit the amendment of the petition after the petitioner had served notice that upon the return day of the show cause order for a peremptory mandamus order, he would also move under section 32 of the General Corporation Law of New York, and under section 31 of the General Corporation Law of Delaware. The entire procedure is somewhat confused, but since contested corporate elections, and particularly contested incidents relating to the voting at such elections, must, for the most part, be litigated summarily, the courts will not deny relief because of failure to follow the exact procedure, where there is no element of surprise and where there can be no substantial prejudice by the procedure followed.

The failure to cancel the revenue stamps affixed to the proxies did not invalidate them.

It appears from the evidence that the failure to file the proxies and to count the votes thereunder was due to an oversight, the proxies having been intrusted to one of the inspectors of election before the meeting was opened, and he having inadvertently failed to file all of them. It was, therefore, the duty of the inspectors of election to file the disputed proxies when they were presented after the polls were closed but before the vote had been announced. This holding is in keeping with the well-recognized rule that stockholders' meetings should be conducted with fairness and in good faith, and that a mere mistake should be corrected when it can be done without prejudice to the rights of others and before the final vote is announced.

The court has jurisdiction to consider this question, notwithstanding the corporation was organized in Delaware, for its entire assets consist of shares of stock in a New York corporation, and all of its business is done in New York, where all of its officers and directors, except one, reside, and where nearly all of its stockholders reside.

Accordingly, the inspectors of election are ordered to reconvene, accept the disputed proxies, and count the votes thereunder, and the corporation, its officers, directors and stockholders are ordered to convene and to receive the report of the inspectors of election.

APPEAL by the Frontier Mortgage Corporation and another from a peremptory mandamus order granted at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 16th day of May, 1925, directing the judges of election of the stockholders' meeting of the Frontier Mortgage Corporation to receive, tabulate and count certain contested proxies.

*Botsford, Mitchell & Albro* [*Peter A. Schulz* of counsel], for the appellant Frontier Mortgage Corporation.

*Peter A. Schulz,* appellant, in *propria persona.*

*Fleischman, Block & Altman* [*Simon Fleischman* and *James O. Moore* of counsel], for the respondent.

CROUCH, J.:

The Frontier Mortgage Corporation, organized under the laws of Delaware, was authorized by law to hold all meetings of the stockholders at the office of the corporation in Buffalo, N. Y.

Its regular annual meeting was stated to be held on March 11, 1925. Eleven directors were to be elected. There was a contest between two factions for control. One faction will be hereinafter referred to as the Company, the other as the Protective Committee. Each faction had a ticket in the field. Each had been active in securing proxies.

After the meeting was called to order at two o'clock P. M. on the stated day, three judges of election were chosen. Mr. Kennedy represented the Protective Committee, Mr. Schulz the Company, and Mr. Jebbett was impartial. The judges thereupon seated

Fourth Department, June, 1925.          [Vol. 213

themselves at a table, and the chairman of the meeting called upon those present to file their proxies. The proxies of the Protective Committee, which ran to J. Rogers Young, had, prior to the meeting, been intrusted to Mr. Kennedy. They were in two lots, inclosed in separate envelopes of different size. Together with other papers, they had been brought by Mr. Kennedy in a traveling bag to the meeting. At the call to file proxies, Mr. Kennedy took the two envelopes from the bag, laid them upon the table, withdrew from the larger envelope what he believed to be all of the proxies, and spread them on the table. Then, under the impression that the smaller envelope contained merely type-written lists of stockholders, he tossed it and the empty larger envelope back into the bag. When the filing of proxies was completed, the voting began. The polls were closed sometime before the meeting adjourned that afternoon. The election judges remained together after the meeting, and had dinner together. The representative judge of each faction retained possession of its proxies. During the evening they worked together on the canvass. Shortly after eleven P. M. they went to the office of Mr. Jebbett, where the proxies, in separate containers, were locked in a vault.

On the morning of March twelfth the judges met at Mr. Jebbett's office, obtained the proxies from the vault, and continued the work on the canvass. About four-thirty P. M. a messenger from Mr. Young called to obtain from Mr. Kennedy a typewritten list of the Protective Committee's proxies, which was in the bag. Kennedy opened the bag. On top lay the smaller envelope. He took it up, pulled out the papers, and then for the first time noticed that they were proxies. He passed them over to Mr. Jebbett, and called his attention to them. Mr. Jebbett said that they could not use them because the stamps were not canceled, and because the polls were closed, and they were not presented in time. Mr. Kennedy then asked Mr. Schulz what his idea of it was. Mr. Schulz said he did not see any occasion for discussing the question then, as it might not be necessary to use them, and that if the vote was close they could discuss it later. The list of Protective Committee proxies, for which the messenger had called, was checked over in the presence of all the judges. Among others, the disputed proxies were listed thereon. The judges continued in session until eight o'clock P. M., when the proxies were placed in the vault as on the preceding night.

On the morning of March thirteenth the judges again met, obtained the proxies and continued their work. During the morning Mr. Jebbett stated to Mr. Kennedy that he knew what he was

going to do with reference to the disputed proxies. Mr. Schulz said that he had not come to any conclusion. That afternoon Mr. Young, the proxy holder, requested the privilege of canceling the Federal revenue stamps thereon. The judges continued in session until nine o'clock P. M., when the proxies were as before deposited in the vault.

On the morning of March fourteenth the judges again met, took out the proxies, and continued work. About three o'clock P. M. they were served with a show-cause order made in a mandamus proceeding on the petition of Mr. Young, containing a stay restraining them from making any determination of said election of directors, and from reporting the result of their tabulation of votes cast. Thereafter they continued in session until four-thirty P. M., when the check, except as against totals, was completed. The shares represented by the disputed proxies have not been listed or computed, nor have the proxies themselves been listed, counted or tabulated, nor has any vote thereon been counted or tabulated or recognized, because, as it is alleged, " the judges of election Jebbett and Schulz have at all times refused to do so and have refused to recognize such proxies."

Without attempting to state in detail the tangled proceedings which followed the show-cause order, it is sufficient to say that Mr. Young, the holder of the disputed proxies, and a candidate for director on the Protective Committee's ticket, has sought by means of a mandamus proceeding, as well as by statutory proceedings, under the General Corporation Laws both of New York and of Delaware, to have the disputed proxies recognized as timely filed, and to have the vote which he actually cast thereunder recorded and counted.

Notice was given by the petitioner in this proceeding that upon the return day of the show-cause order, in connection with the motion and the prayer for general relief, petitioner would also move under section 32 of the General Corporation Law of New York, and under section 31 of the General Corporation Law of Delaware,* using the same papers upon which the original motion was based.

The original petition was thereafter by order of the court, upon notice, amended. We see no reason why, under the authority of section 1329 of the Civil Practice Act, the court could not in its discretion permit the amendment.

The application has been resisted upon two broad grounds:

* See Revised Code of Delaware (1915), § 1945 (chap. 65, § 31), as added by 33 Del. Laws of 1923, chap. 104.— [REP.

(a) That the petition did not state facts sufficient to warrant the relief asked; and (b) that the court had no jurisdiction, or at least ought not to exercise it.

These objections in point of law were overruled and leave was given to file answering affidavits. The appellants elected not to do so, but to stand upon the law alone. The facts as stated above are, therefore, to be taken as true.

Contested elections and particularly contested incidents relating to the voting at elections must, for the most part, be litigated summarily. In such proceedings courts are interested in the merits rather than in the technique. Provided always that there is no surprise, and no unfair advantage taken, that there is no substantial prejudice sustained, and that all parties have had a fair opportunity to be heard, the niceties of procedural law may to a certain extent be disregarded, when the circumstances of the case demand it. We are not disposed here to look too curiously into the pedigree of the order appealed from, nor to determine its exact breed. Within the four corners of that potpourri of papers which now passes under the name of amended petition, there is warrant for at least part of the order.

(a) In *Matter of Cecil* (36 How. Pr. 477) it was said by an able judge that inspectors of election are purely ministerial officers. He further said: " When a proxy apparently executed by the stockholder, regular in form, was presented to them, they had no right to refuse to receive the vote, or to assume to themselves the power of a judicial tribunal to try its genuineness. If it were apparently the act of the stockholder, and regular upon its face, that ended the matter so far as the inspectors were concerned. If for any reason, not apparent upon its face, it was invalid, redress must be sought from the courts after the election, if its being used worked any detriment."

Had the disputed proxies in question been offered for filing while the polls were open, it would have been the duty of the judges of election to receive them and to count the vote cast under their authority. The fact that the revenue stamps were not canceled did not invalidate them. (*Cole* v. *Ralph*, 252 U. S. 286.)

It is a fair inference from the facts before us that a majority of the judges of election omitted to receive and file the proxies when presented because they thought they had no right to do so under the law; and since there was, therefore, no basis for the vote cast on those shares, that they omitted to recognize that vote. If it was the duty of the judges to file the disputed proxies when they were presented, and to treat them as they would have done had they been filed when the polls were still open, then we think

the petitioner was not premature in seeking to enforce the performance of that duty.

In the absence of express regulations by statute or by-law, the conduct of meetings, including the election of officers, is controlled largely by accepted usage and common practice. The fundamental rule is that all who are entitled to take part shall be treated with fairness and good faith. That rule, we think, permits the correction of a mere mistake when it can be made without prejudice to the rights of others, and before the final vote is announced. While the judges of election are ministerial officers, nevertheless within the scope of their ministry some discretion resides. So in *People* v. *Albany & Susquehanna R. R. Co.* (55 Barb. 344; 5 Lans. 25; affd., 57 N. Y. 161) it was held not improper for inspectors to keep the election open as long, within a reasonable discretion, as was necessary to receive the vote of those present. In *Rudolph* v. *Southern Beneficial League* (23 Abb. N. C. 199) an election was not vitiated because the polls were kept open after the time prescribed by the constitution and by-laws. In *Hardenburgh* v. *F. & M. Bank, etc.* (3 N. J. Eq. 68) there was a like holding where the inspectors, after the polls were closed, opened them again and received additional votes. In Fletcher's Cyclopedia of Corporations (Vol. 3, p. 2766 *et seq.*) it is said that " an election is not void or voidable  *  *  * because the polls after having been closed, were opened to receive additional votes. But after the votes have been counted, and the result announced, the polls cannot be re-opened and additional votes received.  *  *  * A stockholder or member may change his vote at any time before the result is finally announced. And before that time it is proper to permit him to correct his ballot so that it will express his true intention." (See, also, *State ex rel. Lawrence* v. *McGann*, 64 Mo. App. 225.)

The disputed proxies here were formally offered twenty-four hours after the polls were closed. The evidence before us shows that the delay was due solely to an oversight. The proxies were actually at the meeting and in the custody of one of the judges of election. They had continued in that custody until they were offered. Although the polls had closed, the meeting was still in existence, awaiting the report of the judges. On the record before us, there is no indication that the proxies were upon their face irregular; there is no suggestion of fraud. We think the judges of election should have received and filed the proxies and counted the vote cast thereunder.

(b) The sole assets of the Frontier Mortgage Corporation consist of certain shares of stock in a New York corporation. Ownership of that stock carries with it the right to name a majority of the

directors of the New York corporation. To do so is its only business. While it is created under the laws of Delaware, it resides in New York. All of its officers and directors, save one, are residents of New York; so are nearly all of its stockholders; it is authorized under the law of its creation to hold all its stockholders' meetings in New York; all of them have been held there, including the meeting here in question. It is to be presumed that it has been licensed to carry on its business in New York.

The court below rested its decision on the question of jurisdiction on the authority of *Matter of Wilcox* (123 App. Div. 86). We need not rely alone on the authority of that case in holding that the New York courts might exercise jurisdiction. Under the facts here, none of the reasons which have led to a refusal by our courts to adjudicate such controversies exists. (See *Travis* v. *Knox Terpezone Co.*, 215 N. Y. 259, 263.)

There is absent neither jurisdiction in the strict sense, nor ability to make a decree effective; nor does any substantial consideration of policy interfere. (12 R. C. L. 33; 28 Harvard L. R. 611; *Ernst* v. *Rutherford & B. S. Gas Co.*, 38 App. Div. 388, 392.)

We deem it unnecessary to discuss other and more or less incidental questions argued in the briefs. We think it was proper for the court below to order the judges of election to reconvene, to accept the disputed proxies, and to count the vote cast thereunder, except as to such of those proxies as were lawfully revoked by later written proxies; and to order the Frontier Mortgage Corporation, its officers, directors and stockholders forthwith to convene and to receive the report of the judges of election, and to complete whatever other business might properly come before the meeting. Beyond those matters the order should not have gone.

The order appealed from should be modified in accordance with the foregoing opinion, and as modified affirmed, without costs to any party.

HUBBS, P. J., CLARK, DAVIS and SEARS, JJ., concur.

The order of May 15, 1925, granting a peremptory order of mandamus is modified in accordance with the opinion, and as modified affirmed, without costs of this appeal to either party. The order of May 12, 1925, overruling preliminary objections and the order of May 15, 1925, vacating the stay, are affirmed, without costs of this appeal to either party.