OPINION OF THE COURT
Thomas Russell Jones, J.
These two related motions involve a bitter intrafamily struggle among the children of Elias Gunzburg, the founder of Art-Lloyd Metal Products Corp. (hereinafter sometimes referred to as "Corporation”), to control and manage the Corporation. Aligned on one side with the patriarch, Elias Gunzburg and his wife, Frieda, are their sons, Arthur and Bernard, their daughter, Mildred Savitt, and three grandchildren (hereinafter referred to as "Arthur-Bernard”). The "Arthur-Bernard” group owns the controlling interest in the Corporation, to wit, 53.65%. The opposing side consists of Elias Gunzburg’s sons, Fred and Lloyd Gunzburg (hereinafter referred to as "Fred-Lloyd”), which owns 41.75% of the corporate stock. The remaining 4.60% interest is held by other individuals who are not involved in this litigation.
By differently captioned orders to show cause, each side has moved for relief, pursuant to section 619 of the Business Corporation Law, to control and direct the affairs of Art-Lloyd Metal Products Corporation. The "Arthur-Bernard” party seeks to confirm the election of Arthur and Bernard Gunzburg and Mildred Savitt, as the new directors and new officers of the Corporation, on the basis of the resolution passed at a special meeting of the shareholders, held on February 8, 1979, and a meeting of the newly elected directors, held on the same day. "Arthur-Bernard” also seeks the removal of Fred and Lloyd Gunzburg as directors and officers of the Corporation; to nullify and vacate, ab initio, all acts and resolutions taken by Fred and Lloyd at a meeting of the board of directors held on January 30, 1979, one week prior to the shareholders’ meeting, and to prevent a hearing on proxies ordered by Bernard *898 Jaffe, Esq., who was appointed by the "Fred-Lloyd” group, as inspector of elections at the special shareholders’ meeting, and given authority to determine the validity of Elias Gunzburg’s other proxies presented by "Arthur-Bernard”.
"Fred-Lloyd” has moved for a declaration by this court, nullifying the election of Arthur and Bernard Gunzburg and Mildred Savitt as directors and as officers of the Corporation, and for other relief.
This controversy came to a head as a result of a special shareholders’ meeting held on February 8, 1979, during which Bernard Jaffe, Esq., inspector of elections, appointed by "Fred-Lloyd”, undertook to determine the validity of the several proxies brought to the meeting by the "Arthur-Bernard” group, which would have given control of the Corporation to "Arthur-Bernard”. Present at the meeting were the five Gunzburg children and their respective attorneys. Elias and Frieda Gunzburg, and the Gunzburg grandchildren did not attend the meeting. Their proxies were held and presented by the "Arthur-Bernard” attorneys. Fred Gunzburg, of the "Fred-Lloyd” group, having been elected president of the Corporation at the board of directors meeting on January 30, 1979, assumed the position of chairman, and presided. Fred Gunzburg immediately appointed Lloyd Gunzburg, also of the "Fred-Lloyd” group, to act as secretary, and one Bernard Jaffe to be "inspector of elections”.
Fred Gunzburg immediately objected that the meeting had been illegally called by the "Arthur-Bernard” party and demanded that everyone present identify himself and present his proxies, if any. Lloyd Gunzburg challenged the proxies held by the "Arthur-Bernard” group, claiming that the proxies given by the Gunzburg grandchildren were invalid on the ground that they were not stockholders of record; objected to the proxies signed by Elias and Frieda Gunzburg, on the ground that their signatures were forged and that in any event, the proxies had been obtained by fraud and duress, and on the ground that the aged Elias Gunzburg was not mentally competent to execute the proxy presentation on his behalf. Fred Gunzburg also raised a general objection that all of the proxies were void since they were authorized for a general meeting of stockholders, not for the special meeting then in progress. Fred Gunzburg thereupon referred his challenges to Bernard Jaffe, the inspector of elections, appointed by him. After a protracted dispute, the inspector of elections "reserved *899 decision” on the chairman’s challenges and suggested to him that the meeting be adjourned to enable him to conduct an examination under oath, "at the courthouse” (?), on the matter of Elias Gunzburg’s competence to execute a proxy. Over the objections of "Arthur-Bernard’s” counsel, Fred Gunzburg adjourned the meeting in compliance with the election inspector’s request and left the room, with Lloyd Gunzburg. The "Arthur-Bernard” group remained and proceeded to elect themselves as directors of the Corporation by voting their own and the proxy shares they held, which represented 53.65% of the issued stock of the Corporation.
FINDINGS OF FACT AND CONCLUSIONS OF LAW
(1) The court finds that the special meeting of shareholders, called on January 30 for the purpose of electing directors, was validly convened pursuant to section 603 of the Business Corporation Law and that due notice of same was given to the shareholders of the Corporation.
(2) That all of the challenged proxies were executed on Blumberg forms and authorized the appointee "to vote as (my) proxy at any election of Directors”. The proxies are deemed general proxies, in that the principal shareholders appointed their procurators to vote their interest at shareholders’ meetings in general, without limitation or restriction of any kind (cf. 2 White, New York Corporations [13th ed], par 609.01). The proxies were valid for all shareholders’ meetings whether general or a special (2 White, New York Corporations [13th ed], par 609.01) until and unless revoked.
(3) Assuming, arguendo, that the board of directors meeting of January 30, 1979, was a valid meeting and assuming that Fred Gunzburg was entitled to preside over the shareholders’ meeting on February 8, 1979, the inspector of elections was legally appointed, pursuant to section 610 of the Business Corporation Law. The significant question to be resolved is whether the inspector of elections was authorized by statute to rule as he did, upon the proxy challenges by "Fred-Lloyd”, and seek the forced adjournment of a valid meeting of shareholders. The duties of an inspector at a shareholders’ meeting are spelled out in section 611 of the Business Corporation Law as follows: "The inspectors shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, the validity and effect of proxies, and shall receive votes, ballots or consents, hear and determine all challenges and questions *900 arising in connection with the right to vote, count and tabulate all votes, ballots or consents, determine the result, and do such acts as are proper to conduct the election or vote with fairness to all shareholders”.
This section of the law became effective September 1, 1963, and replaced with substantial changes, section 46 of the Stock Corporation Law and section 24 of the General Corporation Law (see 2 White, New York Corporations [13th ed], § 611, comparison with prior law). Under the earlier statutes, inspectors of elections were purely ministerial officials without power to determine any disputed questions (Matter of Cecil, 36 How Prac 477, 478; Matter of Young v Jebbett, 213 App Div 774, 778, 779; Prigerson v White Cap Sea Foods, 100 NYS2d 881, 885; Matter of Data-Guide v Marcus, 16 Misc 2d 541, 542), such as the genuineness of proxy votes (Matter of Lake Placid Co. [Colburn], 274 App Div 205, 208). In Matter of Cecil (supra, at p 478) the court said that: "When a proxy apparently executed by the stockholder, regular in form was presented to them [the inspectors], they had no right to refuse to receive the vote, or assume to themselves the power of a judicial tribunal to try its genuineness. If it were apparently the act of the stockholder, and regular upon its face, that ended the matter so far as the inspectors were concerned. If for any reason, not apparent upon its face, it was invalid, redress must be sought from the courts after the election, if its being used worked any detriment”. (Emphasis added; see, also, Matter of Young v Jebbett, 213 App Div, at p 778.) "Fred-Lloyd” argues that the afore-mentioned cases, decided under former law, no longer apply because section 611 of the Business Corporation Law, unlike the prior statutes, now expressly authorizes the inspector to "hear and ’determine all challenges and questions arising in connection with the right to vote”. Extensive legal research fails to reveal any New York cases, decided since section 611 of the Business Corporation Law was adopted, which discuss the scope and purpose of the new language of the laws. "Fred-Lloyd” acknowledges that, notwithstanding "diligent effort on the part of counsel (we have) been unable to find a single reported case interpreting the meaning of the word 'The Inspector shall determine * * * the validity and effect of proxies’.” Text writers and commentators who have analyzed the role of inspectors of elections over time, unanimously agree that the inspector’s duties remain limited, as they were in the earlier cited New York cases; that *901 their powers have not been increased; that they are primarily ministerial and not judicial, although the inspectors are deemed to have some "discretionary powers” with respect to irregularities which appear on the face of the shareholder vote or proxy (see, e.g., 2 White, New York Corporations [13th ed], § 611, pars 611.01, 611.02; 5 Fletcher, Cyc Corp [Perm ed], § 2018, pp 97-98; Aranow and Einhorn, Proxy Contests for Corporate Control [2d ed], ch 14, subd c, p 407; 19 Am Jur 2d, Corporations, § 629; 19 CJS, Corporations, § 720, subd c, par [3]). Cases in other States all place similar limitations on the functions and powers of the inspectors of elections (see Ann. 44 ALR3d 1443, and cases cited therein).
On the basis of these authorities and an analysis of section 611 of the Business Corporation Law, the court determines that the new section 611 merely codified existing law, setting forth for the first time in statutory form, the duties being performed by inspectors as purely ministerial officials (see 2 White, New York Corporations [13th ed], § 611, comparison with prior law, par 611.01).
The function of the inspector of elections continues to be to ascertain that the holders of shares are record owners and to count the votes at the shareholders’ meeting. In determining who are stockholders of record, the inspector has no authority to go behind the list of shareholders produced at the meeting (see Business Corporation Law, § 607). He has no writ to adjudicate disputes involving the ownership of shares (Matter of Ringler & Co., 204 NY 30, 38). Restriction on the inspector’s determination of voting qualifications likewise, limits his power to determine the validity of proxies. Once a proxy is found to be valid on its face (i.e., it was given by one who was the listed record holder of the shares), the inspector must accept it and the proxy may vote the shares he holds. Of course, it follows that the inspector has no authority in law or custom to question the right of the record holder to execute the proxy (2 White, New York Corporations [13th ed], pars 611.01, 611.02).
The discretionary powers of election inspectors will reach irregularities which appear on the face of a proxy, i.e., patent discrepancies in names, etc. (see examples cited in 19 Am Jur 2d, Corporations, § 672; Matter of Burke v Wiswall, 193 Misc 14, 18) but not alleged forgeries (cf. Investment Assoc. v Standard Power & Light Corp., 29 Del Ch 225, 245-247), nor claims that proxies were obtained by fraud or duress (cf. *902 Aranow and Einhorn, Proxy Contests for Corporate Control [2d ed], pp 409-410). Such controversies are subject to judicial resolution only (Investment Assoc. v Standard Power & Light Corp., supra, pp 245-247; Aranow and Einhorn, Proxy Contests for Corporate Control [2d ed], p 410).
The court finds that the election inspector in this case had no authority to question or design a procedure to ascertain whether Elias was mentally competent to execute the proxy, presented in his name.
Subdivision (c) of section 609 of the Business Corporation Law specifically forbids the procedure fashioned by the inspector in this case, and provides that: "(c) The authority of the holder of a proxy to act shall not be revoked by the incompetence * * * of the shareholder who executed the proxy unless, before the authority is exercised, written notice of an adjudication of such incompetence * * * is received by the corporate officer responsible for maintaining the list of shareholders”. "Adjudication” is, per se, a judicial function (cf. People ex rel. Graves v Sohmer, 207 NY 450, 459-460; Sans v City of New York, 31 Misc 559, 560; People ex rel. Argus Co. v Hugo, 101 Misc 481, 484, affd 182 App Div 904).
The court therefore determines that the inspector of elections had no authority to pass judgment upon the challenges of "Fred-Lloyd” to the proxies of Elias and Frieda Gunzburg. The inspector was not entitled to "reserve decision” on these challenges, as a judicial officer. The inspector exceeded his ministerial powers by requesting an adjournment of a legally constituted meeting. The ruling by Fred Gunzburg, as chairman of the meeting, acceding to the election inspector’s improper request and adjourning the meeting, violated the legal rights of the shareholders who were assembled for the express purpose of electing directors (Business Corporation Law, § 603); and must, therefore, be regarded as a nullity. The "Arthur-Bernard” shareholders who remained were entitled to ignore the chairman’s invalid and illegal adjournment as they did, and lawfully continue the meeting. The election of new directors by those who remained was legal, since they controlled 53.65% of the stock of the Corporation (Matter of Dollinger v Dollinger Corp., 51 Misc 2d 802).
The court determines that the election of the "Arthur-Bernard” group as directors and the subsequent actions taken by the new directors, including the election of officers, are, prima facie valid. Accordingly, Arthur and Bernard Gunzburg and *903 Mildred Savitt are declared to be the duly elected directors and officers of Art-Lloyd Metal Products Corp. They may immediately assume the duties and functions of those offices. The offices held by Fred and Lloyd Gunzburg, as directors and officers of the Corporation, are hereby vacated. They are directed to turn over to the newly elected directors and officers all property, books, records, papers, moneys, contracts and things of value belonging to the Corporation, Art-Lloyd Metal Products Corp. (Business Corporation Law, § 703, subd [b]; § 715, subd [d]).
On consent of the litigants and lawyers for both sides, the court interviewed the aged Elias Gunzburg and his wife, Frieda, in chambers, to determine whether either of them was then acting under duress or had been defrauded when they executed the disputed proxies. The interview session was recorded and transcribed by an official court reporter of the court for the benefit of the parties. Immediately following the recorded conference with the elder Gunzburgs, counsel for both sides were informed that on the basis of the responses and attitudes of Elias and Frieda Gunzburg, the court found that they had voluntarily executed proxies which the "Arthur-Bernard” group had presented to the stockholders’ meeting on January 30, 1979, and were not defrauded in regard to the execution of the proxies.
The validity of the elder Gunzburgs’ signatures, whether or not they were obtained by fraud or duress, and the question of the competency of Elias Gunzburg to execute his proxy, are matters that cannot be decided on the basis of the documents before the court, nor the informal conference with Mr. and Mrs. Gunzburg, held in chambers. A full hearing is required, if requested. Accordingly, these questions will be set down for a hearing before the undersigned on December 10, 1979. The hearing, if requested and held, shall not stay the enforcement of the directions contained in this decision.
All further applications in the case shall be referred to this court.