In the Matter of MARTIN J. BURKE et al., Petitioners, against FRANK L. WISWALL et al., as Directors of District No. 9 of The United States Trotting Association, et al., Respondents.

Supreme Court, Special Term, Ulster County, July 29, 1948.

*Stanley B. Johnson* for petitioners.

*Kenneth S. MacAffer* for Frank L. Wiswall, respondent.

*Ernest B. Morris* for Lyle J. Tillou and others, respondents.

ELSWORTH, J. The petitioners, both members of the respondent United States Trotting Association, have instituted this proceeding for the purpose of nullifying the election of the respondent Frank L. Wiswall as a director of District No. 9 thereof.

The United States Trotting Association, a nonprofit corporation organized under the laws of the State of Ohio, supervises and regulates the breeding and raising of harness horses throughout the United States and the Dominion of Canada. For the purposes of the election of its directors and the transaction of its business, the territory of its operation has been divided into eleven districts — the State of New York being District No. 9. Each district has three directors — one being elected annually.

The term of the respondent Wiswall as a director of District No. 9 expired on January 1, 1948. A meeting of the members of that district, regularly called, was held in the city of Albany on February 11, 1948, for the purpose of filling the vacancy caused by such expiration. At this meeting the respondent Wiswall was a candidate for re-election and one Edgar J. Baker was a candidate in opposition. The contest resulted in the respondent Wiswall's election by a vote of 497 to 443. The petitioners claim to be aggrieved by the election and challenge the outcome thereof in this proceeding.

It was the original contention of the petitioners that the proceeding was instituted under article 78 of the Civil Practice Act. In their brief, however, they recede from that position with the statement that " It is immaterial whether this application is considered under section 25 of the General Corporation Law or under Article 78 of the C. P. A." The authorities force the conclusion that petitioners' exclusive remedy in the circumstances presented is under section 25 of the General Corporation Law (*Merchants Loan & Investment Corp.* v. *Abramson,* 214 App. Div. 252, affd. 242 N. Y. 587; *Matter of Moscowitz,* 206 App. Div. 289). Accordingly, the proceeding is viewed as a summary one brought thereunder and the court's

powers are limited therefore to "confirm the election or order a new election, as justice may require." (General Corporation Law, § 25.)

The petitioners' alleged grievance arises from the acceptance of 114 proxies in favor of Wiswall and the rejection of 114 duplicate proxies favorable to Baker. Wiswall's declared majority being 54 votes, the election's result turned of course upon these 114 votes.

The election was presided over by the president of The United States Trotting Association, Henry Knauf, of the State of Illinois. While no particular importance attaches thereto, he acted in the capacity of such presiding officer by the tacit consent of all the members present, and not by by-law or other authority of either the parent organization or District No. 9. A stenographer was present at the meeting and his transcribed minutes have been furnished to the court. It is shown thereby that following the nomination of Wiswall and Baker — there being no other nominations — the presiding officer appointed a committee of three members to take charge of the·election and requested that a representative of each candidate be designated to check with the committee. Mr. Ernest B. Morris and Mr. Stanley B. Johnson were named and acted in that capacity for Mr. Wiswall and Mr. Baker, respectively.

It appears that a factional fight had developed among the members of District No. 9 for the office of director held by Wiswall. In anticipation of the election, proxies were solicited by the supporters of both Baker and Wiswall. As a result, the committee had before it the two sets of 114 proxies. The Baker set upon the committee's examination disclosed that the date had been inserted in the same handwriting in almost all cases and in two instances written over an earlier date. The date inserted was that of the meeting — namely, February 11th, although the person who had signed the proxy in many cases lived a considerable distance from the city of Albany. The dating of the Baker proxies by his supporters as of February 11th was admitted to the committee by Baker's representative Johnson in the following language: "I am not going to make any bones about our dating these things because I am going to admit it." (Minutes of meeting, p. 37.) The Wiswall proxies were regular upon their face; they were dated on various dates prior to the date of the meeting; some 36 of these proxies had a notation that the same revoked any former proxy given, thereby indicating that a prior proxy had been executed; and

no charge was made at the meeting as to any irregularity in the form or content of the Wiswall proxies.

The committee set forth the basis of its acceptance of the Wiswall rather than the Baker proxies in this announcement: "The Committee has examined the balance of the proxies which they have heretofore not ruled on and they have come to the conclusion that where two or more proxies have been signed by the same person, that the proxy not dated February 11th, 1948, was actually signed at a date later than the proxy bearing date February 11th, 1948, and is in revocation of such proxy dated February 11th, 1948; and the votes as shown are awarded to the candidate as stated in the proxy which the Committee deems to be the valid proxy." (Minutes of meeting, p. 55.)

Referring to a summary proceeding under section 25 of the General Corporation Law, the court in *Matter of Kaminsky* (251 App. Div. 132, 139) made these observations: "The statute gives the court discretionary power to confirm an election, or to order a new one, ' as justice may require.' Concededly the court may not arbitrarily refuse to ratify an election which has clearly been shown to be legal and fair, and order a new one, if perchance the result is unsatisfactory. On the other hand, if reasonable grounds exist to indicate that the election under review has not been conducted in a proper, regular or fair manner, it should not be confirmed. If the result is not free from suspicion, or is clouded in doubt, and justice demands, we may in all fairness require the parties to start over again. When right, justice and fair play require, a new election should be ordered." And the court in *Matter of Young* v. *Jebbett* (213 App. Div. 774, 779), referring to a corporate election there under review, stated that " The fundamental rule is that all who are entitled to take part shall be treated with fairness and good faith."

So in essence, the question for determination here is whether or not this election was conducted legally, fairly and in good faith.

No objection was voiced to the committee's appointment, nor to the individual members thereof. They appear to have been men of honor and integrity. The petitioners seek in no way to impugn them in this proceeding. A reading of the stenographic record of the meeting reveals their apparent fairness and good faith. They appear to have passed upon the disputed proxies for honest, sound and justifiable reasons, rather than arbitrarily.

Their powers and duties were not stated or fixed at the meeting. Nor were they regulated by statute or by-law. There-

fore, as inspectors or judges of this corporate election they were controlled "largely by accepted usage and common practice" (*Matter of Young* v. *Jebbett, supra,* p. 779). While it is held in *Matter of Cecil* (36 How. Prac. 477) that inspectors are ministerial officers, no intendment is found in that decision to deny them discretionary powers, particularly where, as here, irregularities appear upon the face of the proxies. (See, also, *Matter of Young* v. *Jebbett, supra,* p. 779.) In the case law of this State no decision has been pointed out or found passing upon the powers of inspectors of elections when confronted with duplicate proxies. In view of the innumerable corporate elections that have taken place in the State through the years it is, however, a situation which must be recognized to have arisen with some degree of frequency. Under such circumstances has usage and practice dictated that the inspectors are wholly stymied and shackled? If so, in every such case — at least where duplicate proxies could affect the outcome — the inspectors must simply throw up their hands and say "a new election must be called or you must resort to the courts — we are powerless to act." A corporate election appears to have no halo of sanctity about it demanding any such unreasonable restrictions. In fact, their very frequency itself seems to call for some liberality in the conduct or corporate elections, and when judged and not found wanting in the light of those essential and controlling elements of fairness, honesty and good faith, no sound reason presents itself for disturbing their results.

As hereinbefore held, the court's discretionary power is limited to the confirmation of the election had, or the ordering of a new election. The total vote shows a participation in the election, either personally or by proxy, of close to a thousand members. Their residences are spread throughout the State. Another election would entail substantial expense and considerable inconvenience to many members. No claim is made of chicanery or fraud. The disputed office is only that of one of three district directors. In view of all the existing circumstances, including particularly the very conduct of the election itself by the committee designated, the conclusion it seems must be reached that reasonable grounds do not exist here to compel the parties to start over.

And that conclusion appears to be well founded upon this further ground. It is fundamental that a new election should not be directed to correct an alleged grievance which if sustained would not change the result (see *Matter of Petition of Argus Co.,* 138 N. Y. 557, 569). In this proceeding the respond-

ents have submitted the affidavits of 90 of the 114 members who signed duplicate proxies, to the effect that after signing the Wiswall proxy they did not sign any other proxy or document revoking or in any manner affecting the same, and it continued to be their intention until the time of said meeting that their respective votes should be cast for Frank L. Wiswall for director. Such affidavits have not been controverted by the petitioners. As already pointed out, Wiswall received 497 votes and Baker received 443 votes — a difference of 54. Deducting the entire 114 disputed proxy votes from Wiswall's total of 497 would leave a balance of 383. Adding thereto the 90 that swore to support Wiswall, would give him a total of 473 under any circumstances. Therefore, even if the entire balance of the 114, namely 24, were supporters of Baker — which does not appear to be so — he would still have less votes than Wiswall.

Accordingly, the petitioners' application is denied and the election of the individual respondent, Frank L. Wiswall, confirmed.

Submit order on five days' notice.