Charles H. **WOLPERT** et al., Plaintiffs,

v.

**FIRST NATIONAL BANK OF EAST
ISLIP** et al., Defendants.

No. 74 C 333.

United States District Court,
E. D. New York.

Sept. 9, 1974.

Donner, Fagelson, Hariton & Berka, by Ira M. Hariton, Bay Shore, N. Y., for plaintiffs.

Finley, Kumble, Heine, Underberg & Grutman, by Theodore J. Greene, New York City, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This is a derivative action by shareholders of The First National Bank of East Islip, Suffolk County (hereinafter "the Bank"), on behalf of themselves and other shareholders against the Bank and its board of directors. The complaint alleges various acts of self-dealing, mismanagement and violation of federal statutes by the directors causing substantial losses to the Bank. Plaintiffs seek removal of the present directors, an accounting, and recovery of any losses. The case is still in the preliminary phases, most of the activity to date having centered on the motions described below.

Following a hearing held shortly after commencement of the action, the court denied plaintiffs' motion for a preliminary injunction restraining the holding of the Bank's annual meeting and election of directors.[1] The election was held on March 5, 1974, as scheduled, and the defendant board of directors was reelected *in toto*. Alleging irregularities in its conduct, plaintiffs now move to set aside

---

1. The court's memorandum and order was filed March 4, 1974, the day before the meeting was scheduled to be held. A copy is annexed to plaintiffs' present motion as Exhibit 3 to the affidavit of Ira M. Hariton, Esq.

that election and to schedule a new one. Alternatively, they seek the appointment of three directors proposed by plaintiffs in the place of three incumbents. Plaintiffs allege that the proposed directors were elected at the meeting by the cumulative votes of dissenting shareholders, which the defendants wrongfully rejected.

Defendants not only oppose plaintiffs' motion on the merits but also challenge their right to seek such relief by motion in this derivative action. A derivative action, as defendants correctly point out, seeks to redress a wrong done to the corporation—here alleged derelictions by the directors affecting the business and assets of the Bank. Plaintiffs' motion, on the other hand, seeks to remedy alleged injury to them individually in the exercise of franchise rights as shareholders. Since the procedural challenge, if correct, would bar adjudication of the merits, it requires threshold consideration. To place the somewhat novel issue presented in proper perspective, some facts must be stated in addition to those appearing in the court's prior memorandum, n. 1, *supra*.

The Bank's proxy statement, which sought the re-election of the ten defendant directors, contained the following notice:

"1. ELECTION OF DIRECTORS: . . . A shareholder entitled to vote for the election of directors may make nominations for election to the Board of Directors. However, the shareholder making such nomination must give written notification of such intent to the President of the Bank and to the Comptroller of the Currency no later than seven days after the receipt of this notice."

A copy of the Bank's statement was received by Ira M. Hariton, Esq. of plaintiffs' law firm, and a stockholder of record in the Bank, on February 21, 1974.

It is undisputed that on February 27, 1974—within the seven-day period— Hariton hand-delivered a letter to defendant Jay W. Woods, president of the Bank and a director, which gave notice of Hariton's intention to nominate an opposing slate of ten directors at the annual meeting. The letter listed the ten prospective nominees by name, community of residence and occupation, and is reproduced below as an Appendix.[2]

At the meeting, however, all of plaintiffs' attempts to place the opposing candidates in nomination or to have at least some of them elected by the cumulated votes of dissenting shareholders were rebuffed by the defendant management, who had taken charge of the meeting despite a challenge to the validity of some of their proxies. The Hariton notice was ruled deficient for failing to state the residence addresses of the nominees and the number of shares held by Hariton as required by the Bank's by-laws. And although plaintiffs' asserted ownership or proxy control of some 18% of the Bank's stock (approximately 110,300 shares out of 616,173 issued), their efforts to vote these shares cumulatively for three of the opposing nominees on a write-in basis were likewise ruled invalid.[3]

I.

May the court entertain plaintiffs' motion in this action or must they

---

2. The Appendix is a reproduction of a copy of the letter, attached as Exhibit 2 to the Hariton affidavit. While the copy contains no return address for Hariton, it appears undisputed that the original of the letter was written on his law firm's letterhead stationery. Hariton Aff., pp. 2–3; Plaintiffs' Memorandum of Law, p. 13; Transcript of Oral Argument, May 31, 1974, p. 72. Another copy of the letter was sent to the Comptroller of the Currency. Hariton Aff., p. 3.

3. The proceedings at the annual meeting are fully reflected in a sworn verbatim transcript attached as Exhibit A to the opposing affidavit of David S. Hershberg, Esq., associated with the Bank's attorneys in this litigation.

seek relief by way of a separate proceeding, as defendants contend? The argument that a separate proceeding is required stems from the provision in New York law for the contest of a corporate election by an aggrieved shareholder. N.Y.Bus.Corp.L. § 619 (McKinney's 1963).[4] The purpose of the statute "is to provide a summary review of a contested election, free from the procedural complications of a plenary [stockholder's] proceeding." In re William Faehndrich, Inc., 2 N.Y.2d 468, 474, 161 N.Y. S.2d 99, 104, 141 N.E.2d 597, 600 (1957); Saull v. Seplowe, 218 N.Y.S.2d 777, 779 (Sup.Ct.1961). The procedural vehicle employed is a special proceeding initiated by petition, which "does not have the character of an equitable action" such as a stockholder's suit. Saull v. Seplowe, *supra*.

■ New York's Business Corporation Law does not apply to a corporation formed under its own Banking Law, N. Y.Bus.Corp.L. § 103(a), but it does apply to a corporation "formed by or under any act of congress . . .", *id.*, § 103(b).[5] A federal court would thus be justified in seeking guidance from the standards for reviewing a corporate election, as developed in the cases brought under N.Y.Bus.Corp.L. § 619 and its predecessor, N.Y.Gen.Corp.L. § 25. But that does not extend to the *procedure* required by the State courts. The type of proceeding contemplated by § 619 is unknown to the federal courts, which are governed exclusively by the "one form of action" concept applicable to all civil suits whether cognizable at law or in equity, Rules 1 and 2, F.R. Civ.P.

■ Defendants' contention amounts to a demand that plaintiffs be required to resort either to a § 619 proceeding in the State court or a new and separate civil action in this court to review the election they contest. Neither § 619 nor the Federal Rules of Civil Procedure mandate such alternatives. Certainly the right of summary review provided in § 619 is not exclusive to the State courts. In historical essence it is the common law writ of mandamus authorizing a court summarily to direct an official, public or private, to perform a duty owing to the plaintiff. *See* 5 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 2069, 2366, 2367, 2375 (1967).

The real question to be answered here is whether plaintiffs' motion is an appropriate one in this action. As already noted, the defendants are sued herein as directors and officers of the Bank as well as individually. Although the named plaintiffs sue in the right of the Bank and on behalf of other stockholders similarly situated, there is in fact a complete identity of parties on the motion as well as in the action. Moreover, the relief sought in the action includes *inter alia* the removal of defendants for alleged misconduct in office.

---

4. Section 619 provides:

"Upon the petition of any shareholder aggrieved by an election, and upon notice to the persons declared elected thereat, the corporation and such other persons as the court may direct, the supreme court at a special term held within the judicial district where the office of the corporation is located shall forthwith hear the proofs and allegations of the parties, and confirm the election, order a new election, or take such other action as justice may require."

5. National banks are subject to State laws not in conflict with federal statutes and regulations if the State laws do not impose an undue burden on the performance of the bank's functions. Andersen National Bank v. Luckett, 321 U.S. 233, 248, 64 S.Ct. 599, 88 L.Ed. 692 (1944); Brown v. United Community National Bank, 282 F.Supp. 781, 783 (D.D.C.1968); McKee & Co. v. First National Bank, 265 F.Supp. 1, 5 (S.D.Cal. 1967), aff'd, 397 F.2d 248 (9 Cir. 1968); State of South Dakota v. National Bank of South Dakota, 219 F.Supp. 842, 844–845 (D.S.D.1963), aff'd, 335 F.2d 444 (10 Cir. 1964), cert. denied, 379 U.S. 970, 85 S.Ct. 667, 13 L.Ed.2d 562 (1965). New York has enacted various provisions in its banking law and other laws which by their terms apply to national banks. (*E. g.*, N.Y. Banking Law § 247.1(b) places certain restrictions on the ability of a savings bank trustee to become a director of a national bank.)

Although different issues are involved in the present motion, the particular dispute is obviously but a facet of the underlying contest between these parties over the affairs of the Bank. The "just, speedy and inexpensive determination"[6] of the controversy will not be furthered by multiplying the litigation.[7] Nor will a separate action here provide the "summary" disposition to which plaintiffs are entitled under the standard of N.Y. Bus.Corp.L. § 619. That can best be accomplished by this motion without prejudicing any substantial rights of defendants.[8]

■ Finally, defendants' attempt to preclude consideration of the merits by drawing a distinction between relief sought by a shareholder on direct and representative claims is without merit. It is now well settled that theoretical distinctions between a shareholder's direct and representative capacity need not inhibit the granting of appropriate relief when the damage the shareholder suffers flows from the damage done the corporation rather than from the damage inflicted directly upon him. J. I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). That principle is fully applicable to an action such as this. Twardzik v. Sepauley, 286 F.Supp. 346, 349 (E.D.Pa.1968).

## II.

Turning to the merits of plaintiffs' motion, the critical question to be answered is whether such irregularity occurred in the conduct of the election of directors as to require that election to be voided and a new election held. Although defendants contend that an election may not be vitiated for "mere irregularity," they nevertheless acknowledge that it will be set aside when there is "such a degree of irregularity as to affect the result arrived at in a material respect." [9]

■ Defendants' refusal to recognize plaintiffs' slate of opposition nominees at the meeting was in the court's opinion highly improper and an irregularity that materially affected the outcome of the election. It clearly appears that at least three of those nominees could have been elected to the board of directors by the cumulative voting of the substantial number of shares owned or controlled by plaintiffs. The denial of those franchise rights was based solely on the ruling that the Hariton notification letter (Appendix) was untimely and not in compliance with the Bank's by-laws. The underpinnings of that ruling, as will be seen, are conspicuously devoid of merit.

Defendants do not even attempt to defend here the untimeliness ruling given at the meeting as a basis for rejecting the opposition nominees. The reason is obvious. Although the Hariton notice was not received within seven days following "the day on which the notice of meeting was mailed," as specified in Section 1.4 of the Bank's by-laws,[10] it

6. Rule 1, F.R.Civ.P.

7. A prior derivative action commenced by different stockholders is already pending in this court, which the court has suggested should be consolidated with this action since virtually similar transactions are alleged. Housler, et al. v. The First National Bank of East Islip, et al., E.D.N.Y.Civ.No. 73 C 1123.

8. Nor would there appear to be any legal impediment to doing so. As pointed out in White's New York Corporations, the general rule in jurisdictions other than New York "is that, when a court has jurisdiction in equity on independent equitable grounds, it may decide incidentally questions relating to (1) the validity of a corporate election, and (2) shareholders' voting rights at elections in order to render complete relief in the case and avoid unnecessary multiplicity of suits."
3 White on New York Corporations ¶ 619.01 [1] [c] (1973). See W. Fletcher, supra, § 2070.

9. Defendants' Memorandum of Law, p. 2.

10. "Section 1.4 NOMINATIONS FOR DIRECTOR
"Nominations for election to the Board of Directors may be made by the Board of Directors or by any shareholder of any outstanding class of Capital Stock of the bank entitled to vote for the election of directors. Nominations, other than those made by or on behalf of the existing man-

had been received within seven days after receipt of the Bank's notice of meeting as specified therein, p. 627, *supra.* Whether the change from the by-law was an error or a waiver, it could not in these circumstances support the ruling made at the meeting.

The real thrust of defendants' justification for the rejection of the opposition nominees consists of asserted serious defects in the content of the Hariton notice, which is said to violate § 1.4 of the Bank's by-laws, n. 10 *supra.* Thus they point out (1) it does not state the address of each nominee; (2) it does not state the total number of shares of the Bank's stock that would be voted for each proposed nominee; (3) it does not state the residence address of the notifying shareholder; and (4) it does not state the number of shares of capital stock of the Bank owned by the notifying shareholder. Before evaluating these alleged defects it would be helpful to review the federal law which underlies the federal regulations upon which the Bank's by-laws were modeled.[11]

agement of the bank, shall be made in writing and shall be delivered or mailed to the President of the bank and to the Comptroller of the Currency, Washington, D. C., not less than fourteen (14) days nor more than fifty (50) days prior to any meeting of shareholders called for the election of directors, provided however, that if less than twenty one (21) days notice of the meeting is given to shareholders, such nomination shall be mailed or delivered to the President of the bank and to the Comptroller of the Currency not later than the close of business on the seventh (7th) day following the day on which the notice of meeting was mailed. Such notification shall contain the following information to the extent known to the notifying shareholder: (a) the name and address of each proposed nominee; (b) the principal occupation of each nominee; (c) the total number of shares of the capital stock of the bank that will be voted for each proposed nominee; (d) the name and the resident address of the notifying shareholder; and (e) the number of shares of capital stock of the bank owned by the notifying shareholder. Nominations not made in accordance herewith may, in his discretion, be disregarded by the Chairman of the meeting, and upon his instructions, the vote tellers may disregard all votes cast for each such nominee."

11. The regulation pertinent here, 12 C.F.R. § 17.1, provides:

" § 17.1 Amendment of articles of association or bylaws.

"Any national bank may provide in its articles of association or bylaws, or both, for a requirement that any shareholder who intends to nominate or to cause to have nominated any candidate for election to the board of directors (other than any candidate proposed by the bank's present management) shall notify the bank and the Comptroller of the Currency. Such bylaw or amendment may provide that the notification shall be made in writing and delivered or mailed to the President of the bank and to the Comptroller of the Currency not less than 14 days nor more than 50 days prior to any meeting of stockholders called for the election of directors, provided however, that if less than 21 days' notice of the meeting is given to shareholders, such nomination shall be delivered or mailed to the President of the bank and to the Comptroller not later than the close of the seventh day following the day on which the notice of meeting was mailed. Such notification shall contain the following information to the extent known to the notifying shareholders:

"(a) The names and addresses of the proposed nominee;

"(b) The principal occupation of each proposed nominee;

"(c) The total number of shares that to the knowledge of the notifying shareholders will be voted for each of the proposed nominees;

"(d) The name and residence address of the notifying shareholder; and

"(e) The number of shares owned by the notifying shareholder.

"If a national bank duly adopts the foregoing notice requirements, any nomination for director not made in accordance therewith, may be disregarded by the chairman of the meeting and votes case for each such nominee may be disregarded by the vote tellers. In the event the same person is nominated by more than one shareholder, the nomination shall be honored and all shares shall be counted if at least one nomination for that person complies with this part."

The regulation is part of a scheme of regulation promulgated by the Comptroller of the Currency pursuant to his authority, *inter alia,* "to prescribe such rules and regulations as he may deem necessary in order to carry out the provisions of [the national banking laws]." 12 U.S.C. § 211.

Sections 71–78 of Title 12 outline the principal provisions relating to directors of national banks, and are largely unchanged from those found in the National Bank Act of 1864. Section 72, in particular, spells out affirmative qualifications applicable to becoming a director or continuing in office: United States citizenship (every director), residence in the same state as or within 100 miles of the bank for at least a year before the election and thereafter (two-thirds of the directors), and ownership of not less than $1,000 in aggregate par value of stock in the bank (every director). Section 78, on the other hand, specifies certain occupational disqualifications which bar service as a director of a national bank.

It is evident that the Comptroller's regulation and the Bank's by-law concerning nomination information are in part designed to inform the Bank and the Comptroller as to whether the federal statutory requirements are met by a proposed nominee or his nominator. But there is no regulation requiring the nomination notice to state the number of shares (or their value) owned by a proposed nominee or the duration of his residence. Conversely, federal law does not require advance notice of the number of shares expected to be voted for each proposed nominee.

With that perspective, the court finds the deficiencies alleged by the Bank to be just the sort of unwarranted hypertechnicality previously criticized in an unrelated case. *See* Cupo v. Community National Bank & Trust Co., 324 F.Supp. 1390, 1392 (E.D.N.Y.1971) (evaluation of proxies). It is true no resident street address was given for the proposed nominees. Yet by its terms the notification only called for an "address." While that might normally imply the need for a street and number, in this case all of the proposed nominees lived in a cluster of relatively small communities, more or less contiguous on the southern shore of Long Island in Suffolk County, New York, all of which are located so close to the Bank's office as to have no problem with 12 U.S.C. § 72. Moreover, the occupations described for the nominees plainly indicate that they are well-known citizens of these communities. In these circumstances, the failure to provide a resident street address was not a material defect.

Similarly, the failure of the notifying shareholder to indicate his resident address is insignificant in view of the fact that the letter was sent on his law firm's stationery, which provided his business address. *See* n. 2, *supra*. Nor was his failure to indicate the number of shares of Bank stock he owned significant. This is information the Bank is required by law to have in its possession, to keep current, and to be kept subject to inspection by any shareholder. 12 U.S.C. § 62.

Finally, the Bank notes Hariton's failure to indicate the expected vote of shares for each nominee. It may well be that such information is often exclusively within the possession of a dissident group of shareholders. But it is not information the incumbents are entitled to by statute, either to apprise them of the seriousness or dimensions of a challenge to their leadership or for any other reason. In fact, as promulgated in 12 C.F.R. § 17.1 and the Bank's by-laws, the information need only be given "to the extent known" to the notifying shareholders. There is no affirmative requirement that the notifying shareholder state his lack of knowledge when he does not know, and although the court inferentially could, it will not read such a requirement in. Under the circumstances presented here, where the number of shares to be voted for each of the proposed nominees was unknown to the notifying shareholder,[12] the court must again conclude that there has been no material departure from the notification requirements.

12. This fact is apparent from the whole of the Hariton affidavit, and more particularly, Plaintiffs' Memorandum of Law, p. 13.

Although no such objection was voiced at the Bank's meeting, defendants advance here an unclean hands defense, contending that by their own conduct, plaintiffs were not entitled to have their nominees considered at the election. They charge plaintiffs with numerous proxy solicitation violations growing out of publicity surrounding the filing of this action and the court's prior denial of injunctive relief. This consists largely of the rather dubious claim that a relatively non-polemic newspaper account of the prior proceedings (Hariton Aff., Exh. 4) amounts to an improper proxy solicitation when plaintiffs were thereafter sought out by shareholders seeking to revoke management proxies.

Even if plaintiffs affirmatively sought such proxies, the court sees no reason why, as intimated above, the proper remedy is not the setting aside of an infected election, rather than the self-help used in this case to reject the nominees *ab initio*. Defendants cite no authority for the extraordinary proposition that they could become judges of what was and was not improper proxy solicitation by others. It is for the court, not the parties, to apply the unclean hands doctrine when circumstances require, but that is not the case here. *Cf.* Chris-Craft Industries, Inc. v. Independent Stockholders Committee, 354 F. Supp. 895, 921–922 (D.Del.1973). In view of the substantial compliance by plaintiffs with the notification requirements in the by-laws, there was no basis in law or in fact for the Bank's refusal to recognize the opposing slate of proposed nominees.

### III.

Turning to the question of relief, it hardly needs stating that an irreducible element of "fair corporate suffrage," J. I. Case Co. v. Borak, *supra*, 377 U.S. at 431, 84 S.Ct. 1555, is the opportunity to make free choices among lawfully nominated and qualified candidates. In this case that most essential element was effectively and totally frustrated by an arbitrary rejection of proposed nominees. If an election can be set aside for serious proxy solicitation violations, then *a fortiori*, it can be done in a case such as this.

Under New York law, the courts have been given the power to set aside corporate elections in appropriate circumstances. Under N.Y.Bus.Corp.L. § 619, the general standard for setting aside an election has been stated thusly:

"The statute gives the court discretionary power to confirm an election, or to order a new one, 'as justice may require.' Concededly the court may not arbitrarily refuse to ratify an election which has clearly been shown to be legal and fair, and order a new one, if perchance the result is unsatisfactory. On the other hand, if reasonable grounds exist to indicate that the election under review has not been conducted in a proper, regular, or fair manner, it should not be confirmed. If the result is not free from suspicion, or is clouded in doubt, and justice demands, we may in all fairness require the parties to start over again. When right, justice, and fair play require, a new election should be ordered." [13]

In essence, the question is whether or not the election "was conducted legally, fairly and in good faith."[14] Under this standard elections have been set aside for numerous reasons. *See, e. g.*, N.Y. Bus.Corp.L. § 619 (McKinney's 1963) at nn. 41–55. Of particular relevance here, elections have been set aside for an unauthorized refusal to allow stockholders to vote,[15] for an erroneous rejection of

13. Application of Kaminsky, 251 App.Div. 132, 139, 295 N.Y.S. 989, 999, reargument denied, 251 App.Div. 795, 298 N.Y.S. 171, aff'd, 277 N.Y. 524, 13 N.E.2d 456 (1937); In re Machinery Builders, Inc., Sup., 44 N. Y.S.2d 198, 201 (1943); Burke v. Wiswall, 193 Misc. 14, 17, 85 N.Y.S.2d 187, 190 (1948).

14. Burke v. Wiswall, *supra*, 193 Misc. at 14, 85 N.Y.S.2d at 190.

15. Springfield, L. I., Cemetery Society v. Gilleran, 212 N.Y. 336, 106 N.E. 110 (1914).

votes[16] or proxies,[17] or when stockholders were enjoined from participation in an election by a temporary injunction that was subsequently dissolved.[18]

■ The court is left with no doubt that the election here must also be set aside. The arbitrary rejection of proposed nominees is, at the least, a fundamental wrong done to those shareholders who would have supported them and might well be shown to be a wrong done to the Bank itself. Based on the clear showing that at least three of the rejected nominees could have been elected, the election can and ought to be set aside. Two of the incumbent directors, defendants Hocker and Menella, were elected with the votes of 330,581 shares each. The remaining incumbents received the votes of 327,029 shares each.[19] Had the plaintiffs and their allies been permitted to vote their shares on a cumulative basis (a right protected by statute, 12 U.S.C. § 61 and provided for in both the Bank's by-laws and the February 1974 proxy statement), dividing the total among three opposing nominees, each of the latter could have received the votes of well over 367,000 shares—more than enough to defeat three of the incumbents declared elected.

As alternative relief, plaintiffs requested that the court "appoint" Messrs. Donner, Fisher and Walter Wolpert as directors in place of incumbents Thornewell, Wever and Cannon. No authority is cited for such a request and, for reasons discussed below, a new election is preferable in an atmosphere charged with accusations and counter-accusations of proxy violations, especially when both sides are well aware that their conduct will be subject to close judicial scrutiny.

The facts do not clearly suggest exactly how the ballots would have been cast had the opposition nominees been recognized. How many, if any, and which ones, would have been elected? Which incumbent directors would have lost? These are matters impossible to reconstruct on this record, and unlikely of reconstruction in any event. The court is of the opinion that despite the expense, delay and uncertainty caused thereby, the election must be set aside and a new one ordered. Defendants represent to the court that at least 60 days lead time will be needed in order to properly comply with the proxy solicitation rules.

Accordingly, it is ordered that the election of March 5, 1974 of the board of directors of the Bank is hereby set aside, and a new election shall be scheduled for the second Tuesday in November, 1974. The board thereby elected will serve until the first Tuesday in March, 1975, the normal annual meeting date.[20] The board as presently constituted shall act as board for the Bank until the new election.

So ordered.

16. Matter of Long Island R. Co., 19 Wend. 37, 45, 32 Am.Dec. 429, (N.Y.1837).

17. In re Mt. Vernon Dye Casting Corp., 127 Misc. 169, 216 N.Y.S. 317 (Sup.Ct.1926); In re Townshend, 46 N.Y.St.Rep. 135, 18 N.Y.S. 905 (Sup.Ct.1892). Cf. Burke v. Wiswall, supra, n. 13, where one set of duplicate proxies was rejected in favor of another when there was some uncertainty as to the effectiveness of revocations. The court upheld the election for want of a showing of lack of fairness, honesty and good faith, and for a failure to show that correction of the alleged grievance would have changed the result. 193 Misc. at 18–19, 85 N.Y.S.2d at 191.

18. In re Townsend, 24 Misc. 80, 53 N.Y.S. 289 (Sup.Ct.1898).

19. Transcript, n. 3 supra, p. 80.

20. Cf. Cupo v. Community National Bank & Trust Co., supra, 324 F.Supp. at 1394–1395 (installing a single director for only a portion of a year). The court sees no reason to disrupt the Bank's established procedures by changing the annual meeting date.

**634**

## APPENDIX

### EXHIBIT 2

February 27, 1974

First National Bank of East Islip
345 East Main Street
East Islip, New York 11730
Attention: Mr. J. W. Woods
            President

Gentlemen:

In accordance with your Proxy Statement dated February 11, 1974, the undersigned hereby wishes to inform you of his intention as a shareholder to make nominations for the election of Directors at the Annual Meeting of Shareholders.

The following named persons will be nominated for election to the Board of Directors: ˙

Walter W. Wolpert, East Islip, New York (Former banker associated with The First National Bank of East Islip for 33 years, and former Vice President of The First National Bank of East Islip.)

H. Dexter Wetherell, Sayville, New York (Attorney At Law with offices in East Islip, former Attorney for the East Islip Union Area School District for 16 years, present Attorney for the East Islip Public Library.)

Paul J. Hamilton, West Islip, New York (Builder, real estate broker, member of the Board of Education of the West Islip School District.)

Frank Flynn, Brightwaters, New York (Restaurateur, proprietor of Flynn's Restaurant.)

Aaron B. Donner, Bay Shore, New York (Attorney At Law, and active in many educational and philanthropic organizations.)

Robert L. Hirsh, Bay Shore, New York (Management Consultant, President of Professional Management.)

Dr. Morris Chesances, East Islip, New York (Medical Doctor practicing in East Islip for 40 years.)

Adolph Fisher, East Islip, New York (Businessman and investor, former proprietor of Fisher Fuel Oil.)

Robert Rumplik, East Islip, New York (Proprietor of Rumplik Chevrolet.)

George Remmer, Oakdale, New York (Restaurateur, proprietor of Snapper Inn.)

Very truly yours,

IRA M. HARITON

IMH/cd
cc: Comptroller of the
    Currency