Charles HOUSLER, et al., suing on behalf of themselves, etc., Plaintiffs,

v.

The FIRST NATIONAL BANK OF EAST ISLIP, et al., Defendants and Third-Party Plaintiffs,

v.

Walter F. LANG, Jr., et al., Third-Party Defendants.

Charles H. WOLPERT, et al., suing on behalf of themselves, etc., Plaintiffs,

v.

FIRST NATIONAL BANK OF EAST ISLIP, et al., Defendants.

Nos. 73 C 1123, 74 C 333.

United States District Court, E. D. New York.

Oct. 14, 1981.

Dennis & Stein by Robert M. Stein, Garden City, N. Y., Donner, Fagelson, Hariton & Berka, P.C. by Frederick Fagelson, Bay Shore, N. Y., Franklin D. Ormsten, New York City, for plaintiffs.

Finley, Kumble, Wagner, Heine, Underberg & Casey by Jerome Kowalski, New York City, for defendant First Nat. Bank of East Islip.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

After pending some seven years, these consolidated stockholders derivative actions, brought on behalf of the defendant First National Bank of East Islip ("the Bank") located in Suffolk County, were terminated in a settlement agreement approved by the Court in a judgment entered on January 7, 1981. The judgment also granted leave to plaintiffs' counsel to apply for an award of attorneys fees and such applications are now before the Court. The nominal defendant Bank has challenged the applications as deficient because of the attorneys' asserted failure to satisfy the "general

standards" applied in considering an award of fees. The Bank's principal objection, however, appears to be that plaintiffs' attorneys are seeking an aggregate award which totals 50% of the amount recovered. The total monetary recovery was $250,000, a sum accepted in settlement of the action on the eve of trial. The Court finds the affidavits and time schedules submitted by the attorneys sufficiently detailed to render unnecessary an evidentiary hearing in view of the Court's familiarity with the proceedings since their inception.

This litigation was commenced on July 27, 1973 by the filing of the complaint in the *Housler* action by Michael F. Dennis, Esq. and Robert M. Stein, Esq., as counsel for a group of Bank stockholders who joined in that action. In substance the complaint charged the officers and directors of the Bank with violating their fiduciary duties and various acts of misfeasance which caused loss to the Bank. The allegations of wrongdoing on the part of the directors and officers were broadened with the filing of the separate *Wolpert* action on February 27, 1974, on behalf of two other stockholders, Charles and Martha Wolpert, represented by the firm of Donner, Fagelson, Hariton & Berka, P.C., who are also applying for attorneys fees. The two cases were eventually consolidated by stipulation in 1977, with the attorneys for the respective stockholder groups then agreeing that any fees realized from their efforts would be shared equally by the two firms. In May 1980, however, the Donner firm decided that their prior representation of Walter F. Lang, Jr., a former director and legal counsel to the Bank, who had provided information leading to the litigation and was a third-party defendant, might compromise the plaintiffs' position in the approaching trial. By consent of their cocounsel, an approved order of self-substitution resulted in the replacement of the Donner firm by Franklin D. Ormsten, Esq., who has also submitted an application for attorneys fees.

We now turn to a consideration of the several applications in light of the Bank's objections and the guiding principle that:

"In its simplest terms, the purpose of the fee award is to 'compensate the attorney for the reasonable value of services benefiting the . . . claimant.' *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corporation*, . . . (3rd Cir.) 487 F.2d [161], at 167."

*City of Detroit v. Grinnell Corporation* *("Grinnell I")*, 495 F.2d 448, 470 (2d Cir. 1974).

### Dennis and Stein

These attorneys have applied for a fee of $100,000 and out-of-pocket disbursements of $1,921.36, pointing out that they were retained by another attorney, Joseph Lite, Esq., pursuant to a written agreement that he would receive 25% of any fee awarded them. The agreement recites that "[t]his fee division is intended to reflect the division of work load and responsibility in the future conduct of this litigation." An affidavit of Mr. Lite is attached detailing services he claims to have performed, which extend over the period from August 1972 through July 1973. These are included in the Dennis and Stein "Time Sheet" as accounting for 112.50 hours of the total 750.50 hours claimed by them to have been expended in prosecuting the litigation. Mr. Lite, in fact, never appeared in any proceedings before the Court until a conference regarding fee applications was held on April 15, 1981, and his role as disclosed in the time sheet is clearly consistent with his pecuniary interest as a stockholder plaintiff.

■ The Dennis-Stein application to the extent that it provides for a fee award to Joseph Lite cannot be approved. It is regrettable that the fee-sharing arrangement was not brought to the Court's attention at the outset in view of Lite's role as both stockholder and a named plaintiff in the *Housler* action, since it would have been promptly disapproved. As the Supreme Court long ago pointed out:

"[A] stockholder who brings suit on a cause of action derived from the corporation assumes a position . . . of a fiduciary character. He sues, not for himself

alone, but as a representative of a class comprising all who are similarly situated." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949).

Consequently, Lite, as a plaintiff, could not place himself in the conflicting position of acting as an attorney in this derivative litigation simply by adding his name at the foot of the complaint in the expectation of sharing ultimately in an award of fees, either directly or indirectly. The mere possibility of such a conflict of interest is sufficient to disqualify an attorney from participating both as a plaintiff representative and an attorney in the action. See *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976), *cert. denied*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976), and *Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977). And in a case such as this, where a distinct public interest in sound banking practices was involved, the recognition of a division of fees based on percentage without regard to work performed is all the more inappropriate. See *Prandini v. National Tea Co.*, 557 F.2d 1015, 1019 (3d Cir. 1977).

■ In addition to the disallowance of 112.50 hours claimed for Lite, there are two other items on the Dennis-Stein time sheet which are not compensable in terms of contributing to the settlement achieved in this litigation. The 57.75 hours expended between June and August 1980 in conferences with co-counsel Fagelson and the latter's proposed substitute, Ormsten, relate entirely to the Donner, Fagelson firm's decision to withdraw and have Mr. Ormsten substituted in their place in the *Wolpert* action. This last-minute rearrangement of attorneys to avoid possible problems at trial can hardly be viewed as contributing to the creation of the fund eventually realized by settlement. The other item, 21.75 hours on December 30, 1980, is not allowable, since the preparation of an application for attorneys fees cannot be said to benefit the fund. *City of Detroit v. Grinnell Corp.* ("*Grinnell II*"), 560 F.2d 1093, 1102 (2d Cir. 1977).

Subtracting the foregoing disallowed items, the net compensable time claimed in the Dennis-Stein application amounts to 558.50 hours. The Court rejects the defendant Bank's objection that the details provided on the accompanying time sheet are merely "raw approximations" derived from "recent reconstruction." The subject matter of this litigation concerned the affairs of a small country bank in eastern Long Island. The Court's familiarity with the course of proceedings obviated the necessity for any "Wall Street" elaboration of the services performed by these attorneys. The information furnished on the time sheet submitted conforms to the Court's knowledge of events and is adequate for the task at hand. The Court accepts the adjusted time specified as reasonable and compensable in the circumstances. The value to be assigned to that time is the perplexing question.

■ Despite the difficulty of the task, as stressed by the Bank, the Court is charged with the responsibility of determining a reasonable value for the attorneys' services in light of the results achieved. Obviously, "there are no absolutes which permit determination of a fee with mathematical precision." *Voege v. Ackerman*, 70 F.R.D. 693, 695 (S.D.N.Y.1976). There are, however, recognized factors which may guide the exercise of discretion. They are (1) amount recovered, (2) time fairly required to be spent, (3) skill required and employed, (4) difficulty encountered in unearthing the facts, (5) skill and resourcefulness of opposing counsel, (6) prevailing rate of compensation for those with the skill, experience, and standing of the attorneys involved, (7) contingent nature of the fees, and (8) benefit accruing to the public. *Angoff v. Goldfine*, 270 F.2d 185 (1st Cir. 1959) (stockholder's derivative action).

The amount recovered in this case, $250,000, is certainly not to be compared with the widely publicized large class-action antitrust and securities cases which have produced million dollar recoveries and substantial fees for plaintiffs' attorneys. But all things are relative. If this had been a

personal injury action settled for $250,000, these attorneys, who took the case on a contingent basis, might well have been entitled to one-third the recovery, a fee of $83,000, whatever the time expended. This, of course, was a far more complex litigation, involving claims not only of breach of fiduciary duty owing to the Bank's numerous stockholders, but also serious charges of violations of federal statutes and regulations relating to the operation of national banks. The defendants were represented separately by experienced attorneys who skillfully resisted plaintiffs' attorneys' efforts throughout. In addition to time expended in preparing for and taking the depositions of individual defendants, examination of voluminous bank records was required. In addition, reports, records and correspondence of the Comptroller of the Currency were examined pursuant to protective orders. The Court finds that the 558.50 hours Messrs. Dennis and Stein devoted to the case were reasonably and fairly required for the tasks involved and were in major part responsible for the $250,000 fund created by the settlement.

Aside from the Court's own favorable appraisal of the performance of these attorneys, they have provided unchallenged background information in their application reflecting many years of experience at the Bar and representation of plaintiffs in litigation in the antitrust, securities and labor law areas. During the seven years of this litigation they state that their hourly rate has varied from $75.00 an hour to the present level of $150.00 per hour, which they say is commensurate with the current charges of other attorneys of similar background and experience in the Nassau-Suffolk area of Long Island. They also state that for purposes of this application their average hourly fee is $120.00 per hour.

*Grinnell I* and *Grinnell II, supra,* emphasize that in attempting to assess the value of attorneys' time for purposes of fee applications, primary reliance should be placed on "normal billing rates" but "with an eye to moderation." *Grinnell II* at 1099, quoting from *Grinnell I*, 495 F.2d at 470. The long pendency of this case—some seven years—and the enormous inflation which the applicants say doubled their hourly rate from $75 to $150 an hour complicates the task of determining a fair and reasonable fee award based on the time expended. The Dennis-Stein average rate of $120 per hour strikes the Court as high, if projected back over seven years, and is inferentially inclusive of a 25% "forwarding fee" to Mr. Lite, which the Court has rejected. Reducing the average hourly rate by that percentage [1] would result in a rate of $90 per hour, which appears more in keeping with the result accomplished and the need to make a separate award to co-counsel.

Accordingly, applying the $90 hourly rate to the 558.50 hours recognized as allowable results in a fee award of $50,265.00 to Messrs. Dennis and Stein. Based upon their supplementary affidavit detailing their costs and disbursements necessarily incurred in prosecuting the action, the Court is satisfied that their claim for $1,921.36 is substantiated. That sum will therefore be added, so that the total award to these attorneys will be in the amount of $52,106.36, which the defendant Bank is directed to pay within fifteen (15) days from the date hereof.

*Donner, Fagelson*

This firm of attorneys has also applied for fees in this litigation, suggesting a total fee of $125,000 to be shared by all attorneys in the consolidated case, and reimbursement of their own disbursements in the amount of $1,538.00. Their appearance before the Court began with the filing of a complaint on February 27, 1974 on behalf of Charles and Martha Wolpert, who were substantial stockholders and related to a defendant director, Russell J. Wolpert. The *Wolpert* action, however, was not consolidated with the *Housler* action until October 4, 1977.

---

1. A procedure approved under corresponding circumstances in *Prandini v. National Tea Co.,* 585 F.2d 47 at 50–51 (3d Cir. 1978).

In a 29-page detailed reconstruction of time records misplaced or lost, Donner, Fagelson claim the expenditure of 619 hours dating back to October 1973, some four months prior to the filing of the *Wolpert* complaint. That time is exclusive of 158 hours expended by Franklin D. Ormsten, Esq., who was substituted for Donner, Fagelson on June 13, 1980 as the case was being readied for trial. The substitution was necessitated, as previously noted, by reason of Donner, Fagelson's earlier representation of Walter F. Lang, Jr., whom the defendants had originally brought in as a third-party defendant, then consented to his dismissal, and later brought him in again as the case neared trial.

The Donner, Fagelson application confronts the Court with a preliminary matter which is a cause of some concern. It was not until Mr. Fagelson's supporting affidavit of March 18, 1981 was received that the Court was apprised that he and two of his partners, Messrs. Donner and Hariton, had become stockholders of the Bank in 1974 by purchasing 1,000 shares divided equally among them. This occurred long before the consolidation of the *Wolpert* action with the *Housler* action then being prosecuted by Messrs. Dennis and Stein. Had the Court been promptly informed of this stock purchase, a hearing would have been held to inquire into the possible conflict of interest, the necessity for dual representation, and if there were such need, whether an appropriate understanding with all attorneys could be reached regarding the avoidance of duplication of effort, so as to prevent the difficult situation now presented by these multiple fee applications seeking half of the fund recovered.

Unlike Joseph Lite in the *Housler* action, however, these attorneys did not become named plaintiffs in the *Wolpert* case, and they did perform services which the Court finds contributed to the ultimate settlement of the consolidated litigation. Although the Court considers it surprising that attorneys of their apparent standing did not deem it necessary to reveal their stock ownership, it does not agree with the

Bank's contention that the Donner firm has "relinquished any right to an award of attorneys' fees." Obviously it would be inequitable to find their services of value in producing a recovery for the Bank and not compensate them. Nor is the Court wholly impressed by the Bank's further contention that their earlier representation of Walter F. Lang, when he was a third-party defendant in the *Housler* action, disqualifies them for conflict of interest. Lang was in reality on the side of the Bank's shareholders in revealing conduct on the part of co-directors whom he believed were not faithful to their fiduciary responsibilities. The only possible "conflict" involving Lang arose out of his role as former counsel to the Bank and his responsibility to maintain the attorney-client privilege.

There is no doubt that the *Wolpert* plaintiffs retained the Donner, Fagelson firm to bring suit against the defendant directors (except Lang) and that the firm accepted the case on a contingent basis. The only question the Court must deal with is the value of their services in light of the services rendered by Messrs. Dennis and Stein in the earlier-commenced *Housler* action. Although both sets of attorneys had earlier agreed to share any fee award equally, a dispute arose between them which has necessitated a separate evaluation and award for each group. Unfortunately, this task is rendered more difficult by the decision of the Donner, Fagelson firm to remove themselves from the case in June 1980 because of their prior representation of Walter F. Lang in 1974, when he was a third-party defendant in the *Housler* action, and for which they were eventually paid $7,500 by Mr. Lang. This accounts for the appearance of the third applicant for attorney's fees, Franklin D. Ormsten, Esq., who entered the consolidated case on June 13, 1980 as final preparation for trial was underway. The Donner firm states that they have an understanding with Mr. Ormsten that he would receive one-third of their fee for his services.

Although the Donner, Fagelson firm values its time at $100 per hour, the Court sees

no reason for applying a different hourly rate than that applied in the Dennis-Stein award, namely, $90. Close scrutiny of the Donner time charges, however, reveal many activities that cannot be considered to have created the fund out of which the award must be paid. For example, the primary activity at the outset of the *Wolpert* action in March 1974 was an unsuccessful attempt to postpone the annual meeting of the Bank's shareholders. This was followed after the meeting by a successful attempt to set the election of directors aside. See *Wolpert v. First National Bank of East Islip*, 381 F.Supp. 625 (1974). However, as was then pointed out by the Court, these were activities in the primary right of the shareholders and not a derivative right of the Bank. Other large portions of the Donner firm's time were devoted to Mr. Donner's preparation for and appearance before a House of Representatives committee investigating the Comptroller of the Currency in relation to the operation of national banks; to matters specifically assigned to the Dennis-Stein firm; to contacts and correspondence with Lang's new attorney after the former was again brought into the case as a third-party defendant; to the voluntary substitution of Ormsten in their place; and to the preparation of their fee application.

■ Applying the same standards and principles which were employed in arriving at a fair and reasonable value for the Dennis-Stein services, and to avoid double payment for services adequately performed by the latter attorneys, the Court finds that out of 619 hours claimed by the Donner firm, only 380 are validly compensable. At an hourly rate of $90, the award to the Donner firm is fixed at $34,200, together with expenses in the amount of $1,538.00, for a total of $35,738.00, to be paid within fifteen (15) days of the date hereof.

Finally, for reasons which should be quite apparent, the application of Franklin D. Ormsten is denied. First, there is no reason why this consolidated case could not have been tried by Messrs. Dennis and Stein in the absence of the Donner firm. Second, that the Court approved the latter's volun-

tary substitution by Mr. Ormsten, was not a guarantee that attorneys fees would be awarded as though the Donner firm had finished the course. Mr. Ormsten's specification of time expended exhibits clearly unnecessary duplication of effort and cannot be considered compensable in any respect.

SO ORDERED.